William Donald **KELLEY** et al., Appellants,

v.

**TEXAS STATE BOARD OF MEDICAL EXAMINERS, Appellee.**

No. 17195.

Court of Civil Appeals of Texas, Fort Worth.

May 7, 1971.

Rehearing Denied June 4, 1971.

Margolis & Staffin, and Harry W. Margolis, Dallas, for appellants.

Crawford C. Martin, Atty. Gen., and Guy C. Fisher, Asst. Atty. Gen., Austin, for appellee.

## OPINION

LANGDON, Justice.

This appeal is from a permanent injunction granted against the defendants, William Donald Kelley, individually and d/b/a, The Kelley Research Foundation, and The Kelley Research Foundation, Inc., a corporation, for practicing medicine without a license. Trial was to the court. Findings of fact and conclusions of law were made and filed. The suit against the defendants was initiated by the Texas State Board of Medical Examiners as plaintiff. The parties will be designated as plaintiff and defendants or by name as in the trial court.

The contentions of the defendants on this appeal are summarized as follows:

First—The court erred in its findings of a great many of the extensive findings of fact made by it and in its conclusions of law based thereon. Defendants assert that many of the findings of fact are insignificant and discussion and argument pertaining thereto will be omitted because the record is self-explanatory.

Second—There is a lack of evidence to establish that Kelley's examination and testing of the two State employees constituted anything except the practice of dentistry because everything he did was within the boundaries of such practice.

Third—Finally it is contended by the defendants that (1) the publication, "One Answer to Cancer," does not come within the Medical Practice Act and does not violate the specific terms of the Act itself; (2) it is absolutely impossible to practice medicine by the publication and distribution of a book in the absence of a doctor-patient relationship; and (3) assuming the book constitutes the practice of medicine, which is denied, the guarantee of free speech and freedom of press guaranteed by the U. S. and Texas Constitutions override the interest of the State to suppress or prohibit the publication.

We affirm.

It is undisputed that the defendant Kelley is licensed to practice dentistry in the State of Texas. It is also undisputed that Kelley is not licensed to practice medicine in this State. The same is true of The Kelley Research Foundation, Inc.

Based upon the oral argument and the brief of defendants it would appear that their primary concern pertains to that portion of the injunction which prohibits the publication and distribution of the pamphlet, "One Answer to Cancer." Defendants say that since they have not and do not intend to practice medicine that an injunction prohibiting such practice will not affect them.

The practice of medicine is defined in Art. 4510, The Texas Medical Act, Vernon's Ann.Civ.St., as follows:

"Any person shall be regarded as practicing medicine within the meaning of this law:

"(1) Who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof; (2) or who shall diagnose, treat or offer to treat any disease or disorder, mental or physical or

any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation; provided, however, that the provisions of this Article shall be construed with and in view of Article 740, Penal Code of Texas, and Article 4504, Revised Civil Statutes of Texas as contained in this Act * * *."

Article 4504, V.A.C.S., provides that, "The provisions of this Chapter do not apply to dentists, duly qualified and registered under the laws of this State, who confine their practice strictly to dentistry; * * *."

The practice of dentistry in Texas has been defined by Articles 4543, et seq., to undertaking and offering to diagnose, treat, operate or prescribe by any means or methods for any disease, pain, injury, deficiency, deformity, or physical condition, of the human teeth, oral cavity, alveolar process, gums or jaws. (Art. 4551a).

The term "alveolar process" means the bony ridge of either jawbone, which contains the holes or sockets for the roots of the teeth.

■ A person who is duly licensed as a dentist is not authorized to practice medicine unless he is also duly licensed to practice medicine pursuant to Article 4495, et seq., V.A.C.S.

"One Answer to Cancer," subtitled, "An Ecological Approach to the Successful Treatment of Malignancy" was authored by William Donald Kelley, individually and d/b/a The Kelley Research Foundation in 1967. It was copyrighted in May and in June of 1969. The Kelley Research Foundation charter was approved on December 30, 1969, a date subsequent to the hearing on the temporary injunction. The Articles of Incorporation were signed by the incorporators, William Donald Kelley and wife, Sue Kelley, and Hood C. Hammond, on December 15, 1969. The offices of Kelley and the Research Foundation are maintained at 205 E. Worth, Grapevine, Texas.

The registered agent of the corporation is the defendant, Kelley.

The address of The Kelley Research Foundation appears several times in the pamphlet in which direct solicitation is made for "contributions, donations, or gifts," to help with research projects.

We have carefully examined the entire record in this cause. In our opinion the twenty-seven findings of the trial court which follow this paragraph are fully supported by the evidence and none of such findings are against the great weight and preponderance of the evidence. (1) Dr. Kelley disseminated diagnostic methods of systems, treatment methods, systems and regimes; (2) Dr. Kelley disseminated offers to treat and thereby control, curb or cure certain diseases and disorders, for a stated or known charge; (3) he advocated that a "deficiency of pancreatic enzymes" may be a disease or disorder, physical deformity or otherwise; (4) Dr. Kelley performed certain diagnoses on various individuals through the use of certain tests designed to determine different conditions or functions of the body. Utilizing such test, defendant could tell if pancreas was working properly; (5) Dr. Kelley's examination revealed the pancreas and prostate of the State agent not working properly; (6) very few dentists known to defendant perform blood tests; all the dentists Dr. Kelley knows used laboratories for blood tests; (7) that the functional metabolism index (of defendant Kelley) is not limited to an aid in determining if diseases or disorders, physical deformities or injuries of the oral cavity exist, but rather is a diagnostic technique employed by defendant culminating in a treatment or an offer to treat certain diseases, disorders, physical deformities or injuries consistent with the contents of the book "One Answer to Cancer"; (8) that it is the basic principle of those licensed physicians in Texas that medical professional literature is for the other physicians who are licensed to diagnose and practice; (9) that the book "One Answer to Cancer" contains certain diagnosis, treatment or of-

fer to treat cancer and other diseases, disorders, etc.; (10) that the purchase price of the book may be paid indirectly as part of the fee for performance of a blood test and examination; (11) that the book implies and states that defendant is a doctor without any qualification or exception as to his being only a licensed dental practitioner; (12) the word "doctor" on the cover implies that he is a physician; (13) that the sub-title "An Ecological Approach to the Successful Treatment of Malignancy" is a concise summary and that the contents relate to a diagnosis, treatment, or offers to treat the system, or bodily disease or disorder, physical deformity or injury; (14) that following the regime in the book could be harmful and detrimental to the body; (15) that the defendants developed their own system or method of diagnosis and treatment for the purpose of combating cancer and other diseases or disorders; (16) that defendant used the book to advertise to secure patients to enable defendant to treat, diagnose and effect cures and charge for such services directly or indirectly; (17) that the distribution of the book is a grave threat and a clear and present danger of physical or mental injury; or that it is harmful to the general public; (18) that the defendant told Albert Crites that he would be able to determine by the use of the blood test whether or not Crites has cancer in and throughout his body; (19) that a receipt was issued to Albert Crites for a blood test, diagnosis and treatment recommended by defendant; (20) that defendant performed a diagnosis by telling Albert Crites that he did not have cancer but was suffering from pancreatic disorder, which contributed to Crites' general tired feeling; (21) that defendant treated or offered to treat Crites' pancreatic disorder by prescribing certain items as a regime or method to combat the pancreatic disorder and the general tired feeling; (22) that the defendant, William Donald Kelley, told John Sortore that a blood test would reveal if he had cancer in and throughout his body; (23) that the defendant performed a diagnosis by telling Sortore that the blood test indicated that Sortore had a physical disorder of the prostate and liver; (24) that the defendant treated or offered to treat John Sortore by prescribing certain items as a regime or system to combat the prostate and liver disorders and Sortore's generally tired feeling; (25) that defendant, William Donald Kelley, claimed that he was able to diagnose and determine disorders in a period of four (4) days, whereas a licensed physician would take six years; (26) that John Sortore correctly concluded that defendants were diagnosing and treating or offering to treat him for prostate and liver disorders, as such disorders were related to his body and not as such to his teeth; and (27) that a receipt was issued to John Sortore for examination and lab test.

"In construing the Medical Practice Act, and in determining what constitutes the practice of medicine thereunder, it has been the long and consistent holding of this court that one who publicly professes to treat diseases or disorders, and to effect cures thereof, or one who in fact treats diseases or disorders, as a profession or avocation is practicing medicine, regardless of the system or method employed, the name by which the system is known, or whether or not drugs or surgery are used. The practice of medicine, as contemplated and defined by law, is not restricted to the treatment of diseases and disorders of the human body by the use of drugs or surgery." Ex Parte Halsted, 147 Tex.Cr.R. 453, 182 S.W.2d 479, 483 (1944).

Therefore, if, as prescribed by the Medical Practice Act, Article 4510, et seq., V.A.C.S., the evidence shows either of the above forms of practicing medicine, as defined in Ex Parte Halstead, supra, then the injunction as entered by the trial court has adequate support at law, as it applies to defendant, Kelley.

■ The Legislature by statute may make reasonable classifications of practitioners. Such classifications are not inhibited by the provisions of the 14th

Amendment to the Federal Constitution. Ex Parte Halsted, supra; Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L. Ed. 623. The practice of dentistry has been restricted in the State by Articles 4543 et seq., supra. The limitation of such practice has been previously described above. The fact that the defendant, Kelley, was a duly licensed dentist, did not authorize him to practice medicine. A dentist who publicly represents himself as a dentist and who limits his practice to that of a dentist is excepted from the law requiring a certificate for the practice of medicine. When he represents himself as a physician by publicly professing to diagnose, treat and effect cures for cancer or is in fact diagnosing, treating and effecting cures for cancer for pay, he is not within the exception provided by law, as it applies to dentists.

The book, "One Answer to Cancer," its contents and textual material and the statements made therein by defendant in and of itself constitutes a "public profession" of the practice of medicine by the defendant. It is the combined effect of the entire book and not just the front page, which undoubtedly caused the trial court to conclude that said publication represented a "public profession" of the practice of medicine. Aside from the pamphlet the defendant, Kelley, publicly professed to both Albert Crites and John Sortore, that he could determine by the use of a blood test whether they had cancer. This constitutes a public profession of the practice of medicine. It is not necessary in connection with such statements or activity to say you are a medical doctor, a physician or a surgeon, if what you say and do fall within the definitions of the Texas Medical Practice Act. The defendant admits that he used his metabolism index for determining the different functions and conditions of the body for about 25% of his patients. By his own admission therefore, he was actively holding himself out publicly as a physician by his use of such test.

Under the second test, by which a person is regarded as practicing medicine, the trial court would have considerably less difficulty in determining that the defendant Kelley was diagnosing, treating, or offering to treat and effect cures for money and was therefore not limiting his activities to the practice of dentistry.

■ We find and hold that the defendant, Kelley, publicly professed to be a physician or surgeon and that he was engaged in the unlawful practice of medicine within the meaning of the Texas Medical Practice Act, Article 4510, et seq., V.A.C.S., because of his conduct above described in connection with his authorship of the pamphlet, "One Answer to Cancer," and his conduct with reference to Crites and Sortore.

■ The defendant, Kelley, contends that the statutes have failed to clearly draw the line between the practice of dentistry and the practice of medicine. We disagree. The statutes distinctly restrict the practice of dentistry to the areas of the body mentioned above and the treatment of the general conditions and functions of the body are reserved to medical doctors.

The testimony of Albert Crites and John Sortore concerning the actions and statements of the defendant, Kelley, is more than adequate to support the findings of the Court. Kelley as a licensed dentist did not confine his practice to dentistry. He was practicing medicine. The trial court was correct to enjoin such unauthorized practice.

We come next to the points by which defendants contend that the publication, "One Answer to Cancer," when tested by the provisions of the Texas Medical Practice Act, is not a publication which constitutes the practice of medicine in any form, and assuming it was, the injunction as entered is too broad and exceeds statutory authority in enjoining the distribution and sale of the publication rather than to limit such injunction to sale only.

■ We find and hold that the publication, "One Answer to Cancer," is a diag-

nosis, treatment, and offer of treatment and therefore constitutes the practice of medicine under the provisions and within the meaning of the Texas Medical Practice Act, Art. 4510, et seq., supra. Ex Parte Halstead, 147 Tex.Cr.R. 453, 182 S.W.2d 479, supra. The trial court's conclusion that the publication constitutes an advertising scheme wherein the defendant Kelley solicits medical patients is fully supported by an examination of the pamphlet itself. It becomes more obvious when considered along with the testimony and evidence adduced through the witnesses, Albert Crites and John Sortore.

Both Crites and Sortore stated that they received a copy of "One Answer to Cancer" upon the payment of $1.00, as well as an examination and lab test fee of $50.00, while being treated by Kelley. The record fully supports the findings that defendants have utilized the book, "One Answer to Cancer," as an advertising scheme, with which to secure individuals as patients, to enable defendants to diagnose, treat, or offer to treat a disease or disorder, physical deformity or injury by a system or method described within said book, attempting to effect cures thereof, and for which such patients were charged directly or indirectly.

■ The continued distribution of the book, directly or indirectly by the defendants, would constitute a grave, immediate threat of irreparable harm, a clear and present danger of physical or mental injury or harm to the general public. Such a threat would continue to exist although defendants individually may be enjoined from the practice of medicine. The publication is being used as an illegal tool to aid and abet the unlawful practice of medicine in which actual doctor-patient relationships are being formed. Grievance Committee of Bar of Fairfield Co. v. Dacey, 154 Conn. 129, 222 A.2d 339, 22 A. L.R.3d 1092. In the above case the Connecticut Court enjoined the further sale and publication of legal forms. The appeal was dismissed by the U. S. Supreme Court

for want of a substantial federal question. 386 U.S. 683, 87 S.Ct. 1325, 18 L.Ed.2d 404.

The case of Palmer v. Unauthorized Practice Comm. of State Bar, 438 S.W.2d 374 (Houston, Tex.Civ.App., 14th Dist., 1969, no writ hist.) involved an action for injunctive relief to restrain defendants from engaging in alleged unauthorized practice of law by offering for sale to the general public wills and will forms. The district court granted temporary injunctive relief. On appeal the Court of Civil Appeals held that the sale of will forms to the public by untrained laymen fell within statutory prohibition barring an unlicensed person from practicing law in this State. The case emphasized the right of the State to protect the public interest and the welfare of its citizens and that constitutional guarantee of freedom of expression must yield to permit the rendition of such a decree as is necessary for the reasonable protection of the public.

The defendants contend that the book, "One Answer to Cancer," does not present any "clear and present danger" to society and that no evidence was introduced at the trial court which would support a finding of any danger much less a "clear and present danger." That even if the publication constitutes the practice of medicine, the guarantee of free speech and freedom of the press set forth in the Texas Constitution and the United States Constitution overrides the interests of the State to suppress or prohibit this publication.

We are of the opinion that the testimony of Dr. Jones as well as that of the defendant, Kelley, is more than sufficient evidence to support the holding that continued distribution of the book, directly or indirectly by the defendants, would constitute a grave, immediate threat of irreparable harm and a clear and present danger of physical or mental injury or harm to the members of the general public.

■ The argument of the defendants to the effect that assuming the pamphlet does constitute the practice of medicine, their

right of free speech overrides the State's interest and right to protect the general public is untenable.

It is the practice of medicine by an unlicensed person which creates an immediate danger to the public and entitles a Court of the State of Texas as a matter of law and equity to enjoin such unauthorized activities, so as to reasonably protect the public from unauthorized and unskilled practitioners.

By authority of Article 16, Section 31 of the Texas Constitution, and the general police power, the Legislature has defined the practice of medicine and has enacted rules and regulations governing the practice thereof. It is the right and duty of the State to regulate and control medical practice, so that the public safety and welfare will be served and promoted. The injunction is a permissible remedy authorized by the Medical Practice Act if such a remedy is the only reasonable means to accomplish the purposes of the Act.

█ The constitutional rights of speech and publication are not absolute and in a given case where the public interest is involved, Courts are entitled to strike a balance between fundamental constitutional freedom and the State's interest in the welfare of its citizens. The constitutional guarantee of freedom of expression must yield in the case at bar to afford reasonable protection to the public. Palmer v. Unauthorized Practice Comm. of State Bar, 438 S.W.2d 374, supra; Article I, Sections 8 and 16, Constitution of Texas; Gitlow v. New York, 268 U.S. 652, 666, 668, 45 S.Ct. 625, 69 L.Ed. 1138 (1925).

To hold otherwise would permit the defendant Kelley, to transfer his unauthorized practice of medicine to the pamphlet, "One Answer to Cancer," which contains advertising material which endows him as the author with consummate skills and knowledge beyond the reach of all other licensed medical doctors or physicians and glorifies him as the answer to prayers. By the device of such a transfer the defendant, Kelley, would attain the protection of a shield which would protect him forever against the power of the court to reach him and thus put a stop to his unlawful practice of medicine.

Again a holding to the contrary would provide the defendant, Kelley, with two doors to his office. One door marked "Dentist" would lead to a waiting room where Kelley, as a licensed dentist, could lawfully examine and treat within the limitations of such practice. A second door marked, "Kelley Research Foundation, Inc." or "One Answer to Cancer," will as the pamphlet entreats and urges lead a prospective patient into the same waiting room (as the door marked "Dentist") where the defendant, Kelley, may examine, treat and prescribe and thus engage in the unlawful practice of medicine by doing what he says he can and will do in his book, "One Answer to Cancer."

There is no inherent right to practice medicine. The State through its legislative arm has the authority to license, regulate and control such practice. The courts are authorized to enforce the laws enacted by the legislature.

The rights of speech and publication are not absolute. In a given case in which the public interest is involved the courts are entitled to balance fundamental freedoms and the interest of the State and the welfare of its citizens.

The defendant, Kelley, as the author of, "One Answer to Cancer," clearly intends by the language employed that the purchasers of his book shall act upon the basis of his medical and health advice and he solicits such purchases by his patients through the use of such language.

It would be a useless gesture to permit the defendant, Kelley, individually or d/b/a The Kelley Research Foundation, Inc., neither of whom is licensed as medical doctors to engage in the business of selling and distributing medical advice and offering diagnoses and treatment to the public

when under the Texas Medical Practice Act Kelley could not personally do so.

It would be senseless to permit Kelley to continue in such activities free of any control of the court.

The issuance of an injunction against the defendant, Kelley, alone would be wholly ineffective to stop the unlawful practice of medicine if the other defendant was permitted to continue with the sale and the distribution of the objectionable pamphlet, "One Answer to Cancer."

All points of error are overruled. The judgment of the trial court is affirmed.