

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 13, 1992

Mr. Homer R. Goehrs, M.D., F.A.C.P.
Executive Director
Texas State Board of Medical Examiners
P. O. Box 13562
Austin, Texas 78711-3562

Opinion No. DM-152

Re: Whether title 22 of the Texas Administrative Code section 280.5(g), (h) is consistent with section 1.03 of the Texas Optometry Act, V.T.C.S. arts. 4552-1.01 through 4552-5.20, and related questions (RQ-304)

Dear Dr. Goehrs:

On behalf of the Texas State Board of Medical Examiners, you have requested our opinion on whether Rule 280.5(g), (h) of the Texas Optometry Board is consistent with the intent of section 1.03 of the Texas Optometry Act (the act), V.T.C.S. article 4552-1.01 through article 4552-5.20. Tex. Optometry Bd., 16 Tex. Reg. 5812, *adopted with amendment*, 16 Tex. Reg. 7742 (1991). In addition, you ask how article III, section 51-a of the Texas Constitution affects the application of section 1.03 of the act.

During its regular session, the 72d Legislature passed Senate Bill 774, which amended the act to create an additional category of optometry practitioners: therapeutic optometrists. *See* Acts 1991, 72d Leg., ch. 588; V.T.C.S. art. 4552, §§ 1.02(2)(C), (7), 1.03, 3.01, 5.20. According to the amended act, both categories of optometry practitioners, optometrists and therapeutic optometrists, employ

> objective or subjective means ... for the purpose of ascertaining
> and measuring the powers of vision of the human eye, examining
> and diagnosing visual defects, abnormal conditions, and diseases
> of the human eye and adnexa, and fitting lenses or prisms to
> correct or remedy any defect or abnormal condition of vision.

*Id.* § 1.02(1); *cf. id.* § 1.02(7) (defining "practice of therapeutic optometry"). However, while the act expressly prohibits optometrists from treating, prescribing, or administering any kind of drug (*id.* § 1.02(1)), the act expressly authorizes therapeutic optometrists to administer or prescribe drugs or physical treatments in

the manner authorized by the act, and to treat the eye and adnexa[1] as authorized by the act without the use of surgery or laser surgery. *Id.* § 1.02(7); *see id.* § 1.03(b). In particular, the act authorizes therapeutic optometrists to, among other things, perform in the following manner:

> A therapeutic optometrist may administer and prescribe ophthalmic devices, over-the-counter oral medications, and topical ocular pharmaceutical agents,[2] other than antiviral agents and antiglaucoma agents, for the purpose of diagnosing and treating visual defects, abnormal conditions, and diseases of the human eye and adnexa .... This subsection does not authorize an optometrist to treat glaucoma in a manner that was not permitted by law on August 31, 1991.[3]

*Id.* § 1.03(b) (footnotes added). Section 1.03(d) of the act requires the Texas Optometry Board (the board) to "adopt rules setting forth the *specific* pharmaceutical agents therapeutic optometrists may use in the practice of therapeutic optometry," and section 1.03(e) of the act creates a five-member technical advisory committee to assist the board in "determining the *specific* pharmaceutical agents" that therapeutic optometrists may use. (Emphases added.) A therapeutic optometrist violates the act if he or she uses any pharmaceutical agent that the board or any law does not authorize the therapeutic optometrist to use.[4] *Id.* § 1.03(d).

---

[1] "'Adnexa' means the lids and drainage system of the eye." V.T.C.S. art. 4552-1.02(8).

[2] Topical ocular pharmaceutical agents are drugs applied to the eye to aid in examining it. Attorney General Opinion JM-454 (1986) at 1. We understand that the term "topical ocular pharmaceutical agents," as used in the act, includes both over-the-counter and prescription topical ocular medications.

[3] Prior to and on August 31, 1991, optometrists who were under the control, supervision, or direction of a physician could treat glaucoma according to the physician's specific directions. *See* V.T.C.S. art. 4552-5.17. In our opinion, the enactment of section 1.03 does not prohibit an optometrist or therapeutic optometrist from continuing to treat glaucoma according to a supervising physician's specific directions.

[4] We note that the Texas Dangerous Drug Act, Health and Safety Code chapter 483, regulates the possession, delivery, and manufacture of all prescription drugs. *See* Health & Safety Code § 483.001(3). Senate Bill 774 amended the Dangerous Drug Act to add licensees of the Texas Optometry Board to the list of practitioners authorized to write prescriptions. Acts 1991, 72d Leg., ch. 588, § 26; *see* Health & Safety Code § 483.001(12)(A). In addition, Senate Bill 774 amended the Dangerous Drug Act to require pharmacists to determine that a therapeutic optometrist is authorized to prescribe a particular medication before dispensing the medication. Acts 1991, 72d Leg., ch. 588, § 27, at 2118; *see* Health & Safety Code § 482.021; *infra* note 10; *see also* V.T.C.S. art. 4542a-1, § 17(w)

In compliance with section 1.03(d) of the act, the board promulgated the rule to be codified as title 22 of the Texas Administrative Code section 280.5(g), (h) on December 18, 1991.[5]   In subsection (g), the board stated that a therapeutic optometrist may prescribe all ophthalmic devices, over-the-counter oral medications, and "topical pharmaceutical agents used for treating visual defects, abnormal conditions, and diseases of the human eye and adnexa." The rule then lists the permitted topical pharmaceutical agents by classification or category, not by generic or brand names.[6]  Section 280.5 expressly states that a therapeutic optometrist may not use a drug falling within any of the listed categories to treat glaucoma in a manner that the law did not permit on August 31, 1991.  22 T.A.C. § 280.5(g); see supra note 3.  The rule further expressly excludes any antiviral drugs falling within the category of anti-infective classification of pharmaceutical agents that a therapeutic optometrist permissibly may prescribe.  22 T.A.C. § 280.5(g).  Subject to these two restrictions, however, the rule permits a therapeutic optometrist to "possess and administer any topical ocular pharmaceutical agent which has a legitimate diagnostic or therapeutic use" that falls within one of the listed categories. Id. § 280.5(h).

You question the validity of the rule on two grounds.  First, you claim that the rule is inconsistent with section 1.03 of the act.  Second, you appear to question whether sections 1.02(7) and 1.03 of the act, which authorize therapeutic optometrists to prescribe certain pharmaceutical agents, violate article III, section 51-a of the Texas Constitution.  We consider your constitutional question first.

You request our opinion as to whether article III, section 51-a of the Texas Constitution "specifically limits optometrists from treating Medicaid patients only, or whether it is a broader prohibition." Generally, article III, section 51-a excepts assistance grants and medical care for needy aged, disabled and blind persons, and for needy dependent children from section 51's prohibition against legislative grants

---

(footnote continued)
(requiring State Board of Pharmacy to inform pharmacists of medications therapeutic optometrists may prescribe).

[5]In accordance with the procedure established in section 1.03(e) of the act, the board formulated the rule with the assistance of a five-member technical advisory committee.  The technical advisory committee considered and passed a draft of the proposed list of categories of drugs therapeutic optometrists could use on September 18, 1991.

[6]It has been suggested that section 280.5(g) lists categories of pharmaceutical agents by their mechanism or function in the body rather than by category of drug, thereby violating "clear legislative intent." The resolution of this issue involves fact questions, which this committee cannot answer.

of public moneys to private individuals or associations. *See* Tex. Const. art. III, §§ 51, 51-a; 1 G. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS at 236-46 (1977); R. WHITESIDE, THE IMPACT OF THE TEXAS CONSTITUTION ON PUBLIC WELFARE 17-21 (1973). However, the last paragraph of section 51-a states as follows:

> Nothing in this Section shall be construed to amend, modify or repeal Section 31 of Article XVI of this Constitution; provided further, however, that such medical care, services or assistance shall also include the employment of objective or subjective means, *without the use of drugs*, for the purpose of ascertaining and measuring the powers of vision of the human eye, and fitting lenses or prisms to correct or remedy any defect or abnormal condition of vision. *Nothing herein shall be construed to permit optometrists* to treat the eyes for any defect whatsoever in any manner nor *to administer nor to prescribe any drug or physical treatment whatsoever*, unless such optometrist is a regularly licensed physician or surgeon under the laws of this state.[7] [Emphases and footnote added.]

Tex. Const. art. III, § 51-a.

The history of the 1964 amendment to the constitution that added this paragraph indicates that the legislature, recognizing a great need previously unprovided among the state's senior citizens, wanted to clarify that medical services

---

[7]Commentators have concluded that this paragraph is a result of the "incredible confusion" over section 31 of article XVI of the Texas Constitution. *See* 1 G. BRADEN, *supra*, at 245; 2 G. BRADEN, *supra*, at 769; R. WHITESIDE, *supra*, at 21. Article XVI, section 31 authorizes the legislature to regulate the practice of medicine. Tex. Const. art. XVI, § 31; *see* 2 G. BRADEN, *supra*, at 767. The Medical Practice Act states that a person is "practicing medicine" if that person (a) publicly professes to be a physician or surgeon and diagnoses, treats, or offers to treat any disease or disorder, mental or physical, by any system or method or to effect a cure; (b) charges a fee to diagnose or treat any disease or disorder, mental or physical, by any system or method and to cure the disease or defect. V.T.C.S. art. 4495b, § 1.03(12). Courts have construed article III, section 31 of the constitution to permit the legislature to authorize various practitioners other than those licensed by the Board of Medical Examiners to practice the healing arts, including administering and prescribing prescription drugs, so long as the practitioners are not statutorily authorized to engage in, or in actuality engaged in, the practice of medicine. *See Kelley v. Texas State Bd. of Medical Examiners*, 467 S.W.2d 539, 542-44 (Tex. Civ. App.--Fort Worth 1971, writ ref'd n.r.e.), *cert. denied*, 405 U.S. 1073 (1972); *Baker v. State*, 240 S.W. 924, 930 (Tex. Crim. App. 1921, no pet.); *Allison v. State*, 76 S.W.2d 527, 530 (Tex. Crim. App. 1934, no pet.).

authorized under section 51-a include the fitting of lenses to correct or remedy defective vision. *See* Legislative Council, THREE CONSTITUTIONAL AMENDMENTS ANALYZED TO BE VOTED ON NOVEMBER 3, 1964, at 15. The first sentence of section 51-a's final paragraph therefore ensures that the medical services the state provides to needy persons includes proper vision testing and fitting for corrective lenses or prisms. We note that nothing in the sentence limits its application to optometrists.

We construe the language we have italicized in the second sentence of section 51-a's final paragraph simply to affirm that section 51-a, in and of itself, does not authorize optometrists to administer or prescribe drugs or physical treatments to needy persons receiving medical assistance. In our opinion, section 51-a's statement that "[n]othing herein shall be construed to permit optometrists to ... administer nor to prescribe" drugs or physical treatments does not mean that optometrists constitutionally are prohibited from administering and prescribing drugs or physical treatments. Rather, section 51-a merely leaves the legislature with the discretion to authorize, by statute, therapeutic optometrists to administer and prescribe drugs or physical treatments. Because the legislature now has enacted a statute permitting therapeutic optometrists to administer and prescribe ophthalmic devices, over-the-counter oral medications, and topical ocular pharmaceutical agents, article III, section 51-a does not preclude therapeutic optometrists from administering and prescribing drugs to Medicaid patients.

Having resolved your constitutional question in the negative, we turn to your questions about the rule the board recently enacted, title 22 of the Texas Administrative Code section 280.5(g), (h), pursuant to the legislature's mandate in section 1.03(d) of the act. We understand you first to argue that, while article 4552-1.03(b) precludes therapeutic optometrists from administering and prescribing antiviral and antiglaucoma agents, the board has included in its list of pharmaceutical agents therapeutic optometrists may use some drugs that serve as antiviral and antiglaucoma agents, but that therapeutic optometrists legitimately may prescribe for other conditions of the eye as well. You state that the board rule "includes those [antiviral and antiglaucoma] agents under the premise that they would not be used for those conditions. This is an untenable position and is contrary to the specific language in" article 4552, section 1.03.

In our opinion, section 1.03(b) unambiguously and absolutely prohibits therapeutic optometrists from administering and prescribing antiviral and antiglaucoma topical ocular pharmaceutical agents, regardless of the use for which the therapeutic optometrist is legitimately using the agent. Indeed, the legislative

history indicates that Senate Bill 774 originally authorized therapeutic optometrists to prescribe all topical ocular medications, but the bill was amended in committee to "[l]imit [] therapeutic optometrists' prescription authority to topical ocular agents other than antiviral and antiglaucoma medications." House Comm. on Public Health, Bill Analysis, S.B. 774, 72d Leg., R.S. (1992) (comparing original S.B. 774 to C.S.S.B. 774). Given this legislative history, we believe that the legislature, if it had intended to authorize therapeutic optometrists to use antiviral and antiglaucoma agents for purposes other than treating viral infections or glaucoma, would have said so expressly. We note that the rule expressly prohibits the use of any of the listed drugs for the treatment of glaucoma in a manner not permitted by law on August 31, 1991 (see supra note 3) and the use of any antiviral drugs that fall within the anti-infective classification, but the rule does not otherwise limit the use of antiviral and antiglaucoma agents. 22 T.A.C. § 280.5(g)(3). Thus, to the extent that the rule permits therapeutic optometrists to administer and prescribe drugs that are antiviral or antiglaucoma agents -- even if the therapeutic optometrist is using the drug for a legitimate purpose unrelated to its antiviral or antiglaucoma properties -- it is invalid.[8] See Attorney General Opinion JM-1149 (1990) at 2 (stating that courts will not respect agency interpretation contrary to clear meaning of unambiguous statute).

Next, you argue that subsection (g) of section 280.5, by listing pharmaceutical agents therapeutic optometrists may use by classification or category, attempts "to circumvent the specificity required by the language of" section 1.03. We disagree. We found no legislative history indicating what the legislature meant by its use of the word "specific" in section 1.03(d). Thus, we attach the ordinary meaning to the word. See Gov't Code § 312.002(a). However, "specific," as it is commonly used, has a range of definitions, from "constituting or falling into a specific category" to "definite or explicit." Compare WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1132 (9th ed. 1990) with Steed v. State, 180 S.W.2d 446, 447 (Tex. Civ. App.--Texarkana), rev'd on other grounds, 183 S.W.2d 458 (Tex. 1944). Considering the absence of evidence as to the definition of "specific" the legislature intended, the board reasonably could construe the statute to authorize it to enact a rule listing permitted topical ocular pharmaceutical agents either by category or by generic or brand name.

We note that the board in its rulemaking process considered whether listing pharmaceutical agents by classification or category complied with statutory intent.

---

[8]Whether a particular topical ocular pharmaceutical agent is primarily an antiviral or antiglaucoma agent is a question of fact that is beyond the purview of this committee.

*See* Texas Optometry Board, 16 Tex. Reg. 7742 (comment to rule 280.5). The board received several written comments on the issue. Ultimately, the board concluded that "[i]t would be unreasonable to require a listing of every pharmaceutical agent by brand or generic name, as the list would number into the several hundreds, and would change on a regular basis." Letter from Joe R. Greenhill, Jr., Counsel, Texas Optometry Bd. to C. J. Francisco, III, Texas Medical Assoc. (Dec. 18, 1991). In our opinion, the board reasonably concluded that listing by category the pharmaceutical agents therapeutic optometrists are permitted to use does not violate the legislative intent underlying section 1.03 of the act.[9] Thus, we conclude that section 280.5(g) of title 22 of the Texas Administrative Code is not invalid for failing to meet some statutorily required degree of specificity.[10] *See* Attorney General Opinion JM-1149 at 2 (stating that courts will give weight to agency's interpretation of ambiguous statute).

## S U M M A R Y

Neither V.T.C.S. article 4552-1.03 nor title 22 of the Texas Administrative Code section 280.5(g), (h) violates article III, section 51-a of the Texas Constitution. To the extent that title 22 of the Texas Administrative Code section 280.5(g), (h) permits therapeutic optometrists to administer and prescribe an antiviral or antiglaucoma drug, even if for legitimate purposes other than treating a virus or glaucoma, it represents an

---

[9]A brief the Texas Ophthalmological Association submitted contends that the rule's classifications embrace pharmaceutical agents which do not exist in topical form or which are antiviral or antiglaucomic. Because the opinion committee does not resolve questions of fact, we cannot determine whether this is actually the case. To the extent that the rule authorizes therapeutic optometrists to administer or prescribe nontopical prescription pharmaceutical agents, or antiviral or antiglaucoma agents, it is invalid as a matter of law.

[10]The board also considered whether listing pharmaceutical agents by classification would provide sufficient notice to pharmacists, who, when requested to dispense a dangerous drug under a prescription issued by a therapeutic optometrist, must determine whether the prescription is for a dangerous drug that section 1.03 of the act authorizes a therapeutic optometrist to prescribe. *See* Health & Safety Code § 483.021(b); *supra* note 4. The Board of Pharmacy submitted written comments to the board, stating that it concurred with the rule and did not object to the classifications of drugs included in the list. Furthermore, the Board of Pharmacy agreed with the board that "the listing of drugs by therapeutic class is more efficient than attempting to list all of the drugs by brand name or generic name." Letter from Fred S. Brinkley, Jr., R.Ph., State Bd. of Pharmacy to Lois Ewald, Texas Optometry Bd. (Oct. 25, 1991). In our opinion, therefore, the board reasonably concluded that the rule provides sufficient notice to pharmacists.

unreasonable construction of unambiguous language in V.T.C.S. article 4552-1.03, and, to that extent, it is invalid. However, the Board of Optometry reasonably construed section 1.03 to permit the board to list by classification or category, rather than by brand or generic name, those topical ocular pharmaceutical agents a therapeutic optometrist may administer and prescribe.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General