# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00239-CV

**Dr. Amber Brooks, D.C., Appellant**

**v.**

**Texas Medical Board and, in their official capacities only, Mari Robinson, Executive Director; Irvin Zeitler, Jr., D.O., Chair of the Disciplinary Panel; and Paulette Southard, Member of the Disciplinary Panel, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-13-003617, HONORABLE TIM SULAK, JUDGE PRESIDING

## MEMORANDUM OPINION

The Texas Medical Board issued a cease-and-desist order to chiropractor Amber Brooks after determining that she engaged in the unlicensed practice of medicine by making offers on her website for treatments that exceeded the scope of the practice of chiropractic. *See* Tex. Occ. Code § 165.052(a). Seeking review of the order in district court, Brooks sued the Medical Board, its Executive Director Mari Robinson, the Disciplinary Panel Chair Irvin Zeitler, Jr., D.O., and Disciplinary Panel Member Paulette Southard (collectively "the Board"). The district court affirmed the Board's order. Brooks appeals, asserting that the Board's order was not supported by substantial evidence and was made through unlawful procedure. We will affirm the district court's judgment.

## BACKGROUND

Brooks maintained a website identifying her as "Dr. Amber Brooks," a "biomedical doctor," "board certified pediatric chiropractor," "craniosacral therapist," and "one of only a few pediatric biomedical doctors in the area." The site stated that Brooks engages in "mentoring and consulting other physicians and practitioners," "assists her patients in achieving optimum health by utilizing biomedical and functional medicine," is concerned about "dysfunction in the body" rather than "the label of the disease," and focuses on "diagnosing the cause of the problem rather than treating just the symptoms." Her listed "Services" included autism [sic], craniosacral therapy, chiropractic, pediatric nutrition, and biomedical intervention. Additionally, her site asked:

**Is your child experiencing . . .**

<u>constipation</u> • colic • <u>acid reflux</u> • bed wetting • poor sleep • asthma
• ear infections • PDD • <u>Autism</u> • <u>ADD/ADHD</u> •or other physical, mental,
or emotional ailments? [1]

The site then credits Brooks with "successfully bridg[ing] alternative and traditional medicine" using "biomedical" and "functional medicine." Specifically, "[h]er success is achieved using homeopathic detoxification, necessary nutritional supplements, dietary changes and counseling, craniosacral therapy, chiropractic adjustments, laboratory testing/evaluation to discover the origination of complications in children, treatment of bacterial/fungus overgrowth, and chelation."

After receiving a complaint about Brooks, the Board conducted an investigation and convened a disciplinary panel of Board representatives to conduct a cease-and-desist hearing. *See* 22 Tex. Admin. Code § 187.83 (2013) (Tex. Med. Bd., Proceedings for Cease and Desist

---

[1] Emphases in original.

Orders). Brooks testified at the hearing, and pages from her website were admitted into evidence. At the conclusion of the hearing, the Board ruled in favor of issuing a cease-and-desist order.[2] Brooks challenged that order by filing suit in a Travis County district court. The district court affirmed the Board's decision, and this appeal followed.

## DISCUSSION

The Texas Occupations Code contains distinct definitions of the practice of medicine and the practice of chiropractic. Tex. Occ. Code §§ 151.002, 201.002(b). "Practicing medicine" is defined in the Medical Practice Act as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who: (A) publicly professes to be a physician or surgeon or (B) directly or indirectly charges money or other compensation for those services." *Id*. § 151.002. By contrast, the practice of chiropractic is the use of "objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body" by "perform[ing] nonsurgical, nonincisive procedures, including adjustment and manipulation, to improve the subluxation complex or the biomechanics of the musculoskeletal system." *Id*. § 201.002(b). Thus, while the practice of medicine is not restricted to any particular part of the human body, the practice of chiropractic is limited to the spine and musculoskeletal system. And while the practice of medicine is not restricted to any particular system or method of treatment, the practice of chiropractic is limited to nonincisive procedures and nonprescription treatment. *Id.* § 201.002(b), (c).

---

[2] Brooks has made changes to her website in response to the Board's complaint, but the cease-and-desist order is based on her website as it existed in May 2013.

3

When engaged strictly in the practice of chiropractic as defined by law, a licensed chiropractor is not engaging in the unlicensed practice of medicine. *Id*. § 151.052(3). But to the extent that a chiropractor exceeds the statutory scope of chiropractic, she would subject herself to the Medical Practice Act—and practice medicine unlawfully. *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 467 (Tex. App.—Austin 2012, pet. denied); *see Ex parte Morales-Ryan*, No. 04-07-00860-CR, 2008 Tex. App. LEXIS 4187, at *10 (Tex. App.—San Antonio June 11, 2008) (mem. op., not designated for publication) (dentist was not engaged strictly in practice of dentistry or within his oral and maxillofacial surgery specialty because he performed procedures that were not restricted to oral and maxillofacial regions); *Kelley v. Texas State Bd. of Med. Exam'rs*, 467 S.W.2d 539, 544-45 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.) (dentist violated Medical Practice Act by authoring and distributing publication offering to treat cancer throughout human body); *Hawkins v. State*, 125 S.W.2d 580, 582 (Tex. Crim. App. 1939) (chiropractor violated Medical Practice Act by unlawfully offering and purporting to treat tuberculosis).

In this appeal, Brooks argues that the district court erred: (1) in affirming the Board's cease-and-desist order because the Board's order is not supported by substantial evidence and (2) in concluding that the Board's order "was not made through unlawful procedure, was not in excess of statutory authority, and does not violate any statutory or constitutional provision." We address each issue in turn.

**Evidence supported the Board's decision**

In her first issue, Brooks contends that there was no evidence presented to the Board showing that she offered to exceed the scope of the practice of chiropractic. Within this issue,

Brooks challenges three of the Board's findings in its cease-and-desist order: (1) that she engaged in the unlicensed practice of medicine by making offers on her website for treatments that exceed the scope of the practice of chiropractic; (2) that her website fails to provide sufficient information regarding the limitations of her practice to the evaluation of the biomechanical condition of the spine and musculoskeletal system and the manner in which she uses treatment procedures to improve the vertebral subluxation complex or the biomechanics of the musculoskeletal system; and (3) that she failed to provide disclosures required by the Healing Arts Identification Act when she identified herself as "Dr. Amber Brooks" and "biomedical doctor" on her website.

The parties agree that our review of the Board's order is governed by section 2001.174 of the Texas Government Code, which requires that we reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2). In reviewing fact-based determinations under this standard, we simply ask whether, considering "the reliable and probative evidence in the record as a whole," some

5

reasonable basis exists in the record for the agency's action. *See id.* § 2001.174(2)(E); *Texas Indus. Energy Consumers v. CenterPoint Energy Houston Elec., LLC*, 324 S.W.3d 95, 105 (Tex. 2010) (citing *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999)). We must affirm the agency's findings if they are supported by more than a scintilla of evidence. *Mireles*, 9 S.W.3d at 131. We apply this analysis without deference to the district court's judgment. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise. *See Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied).

To resolve this first issue, we group the Board's related findings and address them together.

### *Finding No.3—offer to treat exceeded scope of chiropractic*
### *Finding No.5—insufficient information on limits of practice and treatment*

Brooks contends that the Board lacked substantial evidence for its Finding No. 3 that she engaged in the unlicensed practice of medicine by making offers on her website for treatments that exceed the scope of the practice of chiropractic. In a related challenge, she contends that the Board lacked substantial evidence for its Finding No. 5 that her website failed to provide sufficient information regarding the limitations of her practice to the evaluation of the biomechanical condition of the spine and musculoskeletal system and the manner in which she uses treatment procedures to improve the vertebral subluxation complex or the biomechanics of the musculoskeletal system. We conclude that there is more than a scintilla of evidence supporting these findings based on Brooks's testimony at the cease-and-desist hearing as well as her website, which contains pages

6

referencing medical services for children offered in addition to, rather than limited by, the practice of chiropractic.

During the hearing Brooks testified that "a lot of people don't understand why you would want to ever take your kid to a chiropractor, and so I like to go through and explain that on the website." The first sentence on one version of Brooks's site promoted her as "offering the best of alternative and traditional medicine for optimum pediatric wellness." Further down, the page stated, "Dr. Brooks assists her patients in achieving optimal health by using biomedical and functional medicine to help support their growing bodies" and that "[s]he has seen remarkable results on a variety of disorders." In a later version of the site, Brooks deleted the reference to a "variety of disorders" and added a specific inquiry about children's constipation, colic, acid reflux, bed wetting, poor sleep, asthma, ear infections, PDD, Autism, ADD/ADHD, "or other physical, mental, or emotional ailments." This inquiry is emphasized using larger-sized type, some boldface, and underlining "constipation," "acid reflux," "Autism," and "ADD/ADHD." Beneath that, the site again referred to her use of "biomedical" and "functional medicine" bridging "alternative and traditional medicine" for pediatric wellness.

According to Brooks, the purpose of referencing those ailments was to educate parents "about ways that we may be able to help." Consistent with that purpose, the message of Brooks's site is that she "offer[s] the best of alternative and traditional medicine" or "biomedical and functional medicine" to help children with any of the listed ailments (or a variety of disorders). Brooks denied that her website was telling the public that she would help with conditions like acid reflux and A.D.D. using chiropractic care, but she explained that she could "co-treat" symptoms

7

such as constipation under a pediatrician's orders.  She was unsure if the web pages identified what she can diagnose.

In addition to highlighting a list of many children's ailments that Brooks testified she does not treat or diagnose, Brooks's website advertised services including "Biomedical Intervention" and "laboratory testing/evaluation to discover the origination of complications in children, treatment of bacterial/fungus overgrowth, and chelation."  The *biomedical* intervention Brooks offers on her site is not referenced in any Texas statute or rule as treatment within the scope of chiropractic.  Brooks's testimony that "biomedical" is "about nutrition and dietary stuff" veers from the accepted definition of the word, which means "biological and medical" and "pertaining to the application of the natural sciences (biology, biochemistry, biophysics, etc.) to the study of medicine."  *Dorland's Illustrated Medical Dictionary*, 221 (31st ed. 2007).  Regarding the site's reference to her treatment of bacterial or fungal overgrowth, Brooks testified that she added "natural treatments as to not misconstrue that."  Brooks also testified that she changed the "chelation" reference on her site to "detoxification" because doctors perform chelation using intravenous medication, which she does not.  *See* Tex. Occ. Code § 201.002(c) (excluding incisive procedures and prescription of drugs and controlled substances from practice of chiropractic).  Apparently aware of public confusion about her practice, Brooks testified that people have sought care from her beyond the scope of her chiropractic license, and that she refers calls from parents of potential patients to a medical doctor "all of the time."  But Brooks now dismisses the Board's ruling as grounded in "speculation" that the lay public would be confused about the scope of her practice if she omitted words defining chiropractic treatment, such as "spinal" or "musculoskeletal," from her website.

We find some parallels between this case and a decision from our sister court that affirmed an injunction against a licensed dentist who exceeded the limitation of his practice by authoring and distributing a publication offering to treat cancer throughout the human body. *See Kelley*, 467 S.W.2d at 541, 544. In *Kelley*, the court noted that Texas statutes restrict the practice of dentistry to certain areas of the body including the teeth, oral cavity, and gums, while treatment of general conditions and functions of the body are reserved to medical doctors. *Id*. at 544. After reviewing the dentist's publication and applying the statutory definitions for the practice of dentistry and the practice of medicine, the court determined that the publication: (1) implied he was a physician by identifying him as a "doctor" without clarifying that he was actually a dentist; (2) was an offer to treat cancer throughout the body; and (3) was the practice of medicine. *Id*. at 543-45.[3] The court specifically determined, from reviewing the publication itself and the statements therein, that the publication constituted a public profession of the practice of medicine and an advertisement soliciting medical patients. *Id*. at 544-45.[4]

---

[3] Brooks contends that an "offer to treat" under the Medical Practice Act requires the same proof of elements set forth in a case involving an "offer" to enroll in a rebate program. *Cf. McAtee v. City of Austin*, No. 03-10-00496, 2013 Tex. App. LEXIS 12518, at *10 (Tex. App.—Austin Oct. 10, 2013, no pet.) (mem. op.) (appellants alleged city-owned utility was contractually liable for failing to approve their applications for energy-rebate program). We reject that contention. Brooks's website is more like other advertisements with "offers to treat" various ailments. *See, e.g.*, *Hawkins v. State*, 125 S.W.2d 580, 582 (Tex. Crim. App. 1939) (chiropractor who unlawfully offered to treat and used medication purporting to treat tuberculosis had yard sign promoting himself as "Dr. C.L. Hawkins . . . Chiropractor, Naturopathic, Toxine Elimination, Exercise and Health Diet and Health Service"); *Mueller v. State*, 153 S.W.1142, 1143 (Tex. Crim. App. 1913) (appellant who unlawfully practiced medicine placed newspaper ads offering to treat diseases and disorders and invited all afflicted to see him); *Kelley v. Texas State Bd. of Med. Exam'rs*, 467 S.W.2d 539, 544-45 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.).

[4] Relying on *Rogers v. Texas Board of Architectural Examiners*, 390 S.W.3d 377 (Tex. App.—Austin 2011, no pet.), Brooks contends that expert testimony on the scope of chiropractic and whether she exceeded that scope was required. In *Rogers*, we concluded the record

Similarly here, we conclude that the chiropractic limitation on Brooks's practice is not apparent from the web publication advertising her practice and treatments. The later version of her site listed a variety of children's ailments that are not presented as pertaining to the biomechanical condition of the spine or musculoskeletal system. Among the advertised treatments on her site is chelation, which when performed using intravenous medication is a treatment that exceeds the scope of the practice of chiropractic. Nothing on her site shows that these services or treatments for children are limited to chiropractic methods—i.e., the analysis, examination, or evaluation of the biomechanical condition of the spine and musculoskeletal system using nonincisive procedures such as adjustment and manipulation. *See* Tex. Occ. Code § 201.002(b) (defining practice of chiropractic). We conclude that the evidence in this record as a whole provides a reasonable basis for the Board's Finding No. 3—that Brooks engaged in the unlicensed practice of medicine by making offers on her website for treatments that exceed the scope of the practice of

was insufficiently developed to establish as a matter of law whether engineers were exempt from the unauthorized practice of architecture. *Id*. at 391. Here, the record is sufficiently developed to determine whether Brooks's website offered to treat strictly within the statutory scope of chiropractic practice, i.e., in a manner limited to the analysis, examination, or evaluation of the biomechanical condition of the spine and musculoskeletal system by nonincisive procedures such as adjustment and manipulation. *See* Tex. Occ. Code §§ 151.052(3), 201.002(b). The content of Brooks's website affirmatively goes beyond the scope of her license as a chiropractor, and no further testimony was required to establish that fact. In addition, no controverting evidence about the website's content was before the Board.

Brooks also relies on *Dotson v. Texas State Board of Medical Examiners*, 612 S.W.2d 921 (Tex. 1981), to argue that expert testimony about the practice of medicine was required. In *Dotson*, the Court noted the need for expert testimony as to what dosage of certain prescription drugs would have been "non-therapeutic" and constituted a breach of the standard of care supporting the suspension of a license to practice medicine. *Id*. at 923. No issue of medical standard of care is present here. The evidentiary basis for the Board's cease-and-desist order was Brooks's website and other online materials, not that treatments she actually provided were beyond the scope of chiropractic.

10

chiropractic—and for the Board's Finding No. 5—that Brooks's website failed to provide sufficient information regarding the limitations of her practice to the evaluation of the biomechanical condition of the spine and musculoskeletal system and the manner in which she uses treatment procedures to improve the vertebral subluxation complex or the biomechanics of the musculoskeletal system.[5]

### *Finding No. 4—failure to provide disclosures under Healing Arts Identification Act*

Brooks also contends that the Board lacked substantial evidence for its Finding No. 4 that she failed to provide disclosures under the Healing Arts Identification Act when she identified herself as "Dr. Amber Brooks" and as a "biomedical doctor" on her website. We disagree.

The Act requires that chiropractors using their names on any written or printed professional identification shall also designate the healing art they are licensed to practice by using either "chiropractor," "doctor, D.C.," "doctor of chiropractic," or "D.C." Tex. Occ. Code § 104.003(e). Here, it is undisputed that Brooks is not a physician or medical doctor. It is also undisputed that she identified herself as a "biomedical doctor" and "one of only a few pediatric biomedical doctors in the area" on her website. Further, the site implies she is a physician by referring to her "mentoring and consulting *other physicians* and practitioners."[6] (Emphasis added.)

---

[5] Brooks also challenged the Board's Finding No. 1 that all jurisdictional requirements have been met. Having concluded that Brooks made offers to treat on her website exceeding the statutory scope of chiropractic, we reject her contention that the Board lacks jurisdiction over her as a chiropractor. *See Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 467 (Tex. App.—Austin 2012, pet. denied) (noting that chiropractor who exceeds statutory scope of chiropractic would be subject to Medical Practice Act).

[6] A chiropractor is not a physician, and blurring distinctions between them can mislead the public about their respective levels of education and training. *Seabolt v. Texas Bd. of Chiropractic Exam'rs*, 30 F. Supp. 2d 965, 968 (S.D. Tex. 1998) (rejecting argument that chiropractor should be identified as "chiropractic physician" and noting that "[a] chiropractor does not attend medical school, and chiropractic training differs significantly from that of medical doctors. In particular,

11

Brooks acknowledged the concern about her omitted statutory disclosure by testifying, "I see the Board's point." She also stated that if someone does not read her whole web page, "I don't want them to be confused about that," and she subsequently added "D.C." to every place where her name appears on the site. We conclude that the evidence in this record as a whole provides a reasonable basis for the Board's Finding No. 4 that Brooks failed to provide disclosures under the Healing Arts Identification Act when she identified herself as "Dr. Amber Brooks" and as a "biomedical doctor" on her website.

Having considered and rejected Brooks's challenges to the evidence supporting the Board's Findings 3-5, we overrule her first issue.

**Lack of SOAH hearing on cease-and-desist order**

In her second issue, Brooks contends that the district court erred in concluding that the Board's order "was not made through unlawful procedure, was not in excess of statutory authority, and does not violate any statutory or constitutional provision." Specifically Brooks contends that her cease-and-desist order resulted from an improper hearing before the Board instead of the State Office of Administrative Hearings (SOAH) and that the Medical Board improperly delegated issuance of the cease-and-desist order to a disciplinary panel.[7] We disagree.

---

most medical doctors spend several years in supervised clinical training after medical school while most new chiropractors go immediately into practice."); *see* Tex. Occ. Code § 104.003(b), (c) (classifying medical doctors and osteopaths as "physicians").

[7] Brooks also challenges the Board's Finding No. 1 that she "received all notice required by law" for the cease-and-desist hearing. But she waived this complaint by appearing and participating in the hearing without objecting to lack of proper notice. *See* Tex. R. App. P. 33.1(a); *Sloan v. Rivers*, 693 S.W.2d 782, 784 (Tex. App.—Fort Worth 1985, no writ) (party waived complaint about lack of full ten days' notice of hearing by appearing and participating in hearing without objection).

Nothing in the Medical Board's enabling statute or rules specifies that cease-and-desist hearings regarding the unlicensed practice of medicine must be conducted by SOAH. *See* Tex. Occ. Code § 165.052; 22 Tex. Admin. Code § 187.83. The statute authorizing cease-and-desist orders states, in relevant part:

> If it appears to the board that a person who is not licensed under this subtitle ["Physicians"] is violating this subtitle, a rule adopted under this subtitle, or another state statute or rule relating to the practice of medicine, the board after notice and opportunity for a hearing may issue a cease and desist order prohibiting the person from engaging in the activity.

Tex. Occ. Code § 165.052(a). Had the Texas Legislature intended for SOAH to conduct cease-and-desist hearings for the unlicensed practice of medicine, it could have plainly articulated that requirement—just as it did in the preceding section of the statute on disciplinary actions against medical licenseholders. *See id.* § 164.007 (specifying that "A formal hearing shall be conducted by an administrative law judge employed by the State Office of Administrative Hearings."); *see also* Tex. Gov't Code § 2001.054 (stating that provisions of Administrative Procedure Act apply to grant, denial, or renewal of license—including such disciplinary enforcement actions as "revocation, suspension, annulment or withdrawal of a license"—that must be preceded by notice and opportunity for hearing).

Brooks argues alternatively that even if the Medical Board may conduct hearings on cease-and-desist orders, it lacked authority to delegate the issuance of those orders to a disciplinary panel, rather than the full Medical Board. *See* Tex. Occ. Code § 153.005(b) (authorizing Medical Board to act through committee that considers matters referred to it and makes recommendations to Medical Board on those matters). But here the cease-and-desist order had the approval of the

13

full Medical Board.  After the disciplinary panel conducted the cease-and-desist hearing against Brooks and determined that the order should issue, the Medical Board considered and approved the cease-and-desist order at its regularly scheduled open meeting.  Brooks does not dispute that her cease-and-desist order was adopted by the full Medical Board.[8]

Brooks's second issue is overruled.

## CONCLUSION

Having overruled both of Brooks's appellate issues, we affirm the district court's judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:  June 18, 2015

---

[8] Because we conclude that sections 153.005 and 165.052 of the Occupations Code allow the Medical Board to conduct cease-and-desist hearings concerning the unlicensed practice of medicine and to use a disciplinary panel in determining whether such orders should issue, we reject Brooks's contention that the administrative rule implementing those statutes, Rule 187.83, exceeded the Medical Board's authority and was unauthorized.  *See* Tex. Occ. Code §§ 153.005(b), 165.052; 22 Tex. Admin. Code § 187.83.