**Linda J. WEYANDT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–98–00194–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 7, 2000.

Rehearing Overruled Jan. 18, 2001.

Terri Jacobs, Houston, for appellants.

William J. Delmore III, Houston, for appellees.

Panel consists of Justices ROBERTSON, SEARS, and LEE.*

## OPINION

SEARS, Justice.

A jury found appellant, Linda J. Weyandt, guilty of practicing medicine without a license. *See* TEX.REV.CIV.STAT.ANN. art. 4495, §§ 1.03(a)(12) & 3.07(a) (Vernon Supp.1999) (current version at TEX.OC-CUP.CODE ANN. §§ 151.002(a)(13) & 165.152 (Vernon Pamph.2000)). The trial court sentenced her to one year in jail, probated for two years; 100 hours of community service; 21 days in the Harris County Jail as a condition of probation; and ordered her to post a sign at any place of employment stating she is not a licensed physician. In five points of error, appellant argues the conviction should be reversed because (1) the evidence is legally insufficient to support the verdict; (2) the evidence is factually insufficient to support the verdict; (3) the trial court erred by submitting evidence of other crimes, wrongs or acts in violation of Evidence Rules 403 and 404; (4) the statute preventing practicing medicine without a license, as applied to appellant, is unconstitutionally vague; and (5) appellant's constitutional and statutory rights to remain silent were violated when the prosecutor called her to the stand.

### *Factual Background*

Appellant worked as a nurse anesthetist at the Veteran's Administration Hospital in Houston and also ran a private nursing clinic. At her clinic, Associated Hypnotherapy and Pain Management Services of Texas, appellant administered hypnotherapy and other pain management techniques to alleviate her patients' pain. The clinic's Yellow Pages advertisement, which was listed in the hypnotherapists' section, identified appellant as "Dr. Linda J. Weyandt."

Although appellant graduated in 1983 from Universidad del Noreste Medical School in Tampico, Tamaulipas, Mexico, with a doctor of medicine degree, she is not licensed to practice medicine in Texas. She is, however, a Certified Registered Nurse Anesthetist (CRNA), an advanced nurse practitioner, and a certified hypnotherapist.

Elizabeth G. Mihalco, an undercover Houston police officer, visited appellant's clinic claiming she had an injured shoulder. Mihalco made an appointment to see appellant, explaining the problem with her shoulder. When she visited appellant's office, she carried a concealed transmitter in her purse. A tape recording of the ensuing conversations was made by another officer waiting in a vehicle parked outside.

Appellant's name was listed as "Dr. Linda Weyandt" on the door to her clinic, which resembled a typical doctor's office, and hanging on the wall of the reception area were several certificates issued to "Linda J. Weyandt, M.D." When Mihalco entered the clinic, appellant introduced herself as "Doctor Weyandt," and during the initial interview, explained that she had "been in anesthesia" for almost twenty years. When Mihalco spoke of a previous experience with an "anesthesiologist," utilizing the term for a medical doctor specializing in anesthesia, appellant responded that "she would not have done it that way," but did not clarify that she was not an anesthesiologist.

Appellant discussed with Mihalco some possible causes of her shoulder pain and examined Mihalco's shoulder and manipulated her arm. Appellant attached to Mihalco's shoulder and wrist the wires from a peripheral nerve stimulator. Anesthesiologist Carmen Maymi testified that peripheral nerve stimulators are designed to test nerve conduction on patients who are under general anesthesia, in order to determine when their muscles are sufficiently paralyzed as to permit intubation through the trachea. Maymi was unaware of any therapeutic use for the device. Appellant

---

* Senior Justices Sam Robertson, Ross A. Sears, and Norman Lee sitting by assignment.

turned on the peripheral nerve stimulator, and muscles in Mihalco's wrist, arm, and shoulder began to move and twitch. After a moment, appellant increased the electrical current until Mihalco directed her to stop after experiencing pain. Appellant complied, and took Mihalco into another room where she unsuccessfully attempted to hypnotize Mihalco. As the visit was winding down, she suggested Mihalco drink a herbal tea called "Cat's Claw" and charged her $75 for the visit.

As a result of Mihalco's visit, police investigators obtained a search warrant to search appellant's offices, and found several containers of drugs in a cabinet in the treatment room, including injectable lidocaine and lidocaine ointment.

Denise Meyer, Director of the Enforcement Division of the Texas State Board of Medical Examiners, testified that appellant is not licensed to practice medicine in Texas. She also stated that if someone holds an M.D. degree, they are a doctor of medicine, but not a physician until licensed by the Board. Additionally, she noted a person holding an M.D. degree may call themselves doctor and doctor of medicine.

### Legal Sufficiency

 In her second point of error, appellant argues the evidence is legally insufficient to support the jury's verdict. We review legal sufficiency challenges to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). The standard is the same in both direct and circumstantial evidence cases. *See Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991) *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App.2000). For the purpose of applying the *Jackson v. Virginia* test for legal sufficiency, the "essential elements" of the offense are those required by the "hypothetically correct jury charge for the case." *Malik*, 953 S.W.2d at 240. The hypothetically correct jury charge is that which "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* We find *Malik* applies in this case because the jury charge did not precisely track the allegations in the indictment.

Appellant was charged by complaint and information with the offense of practicing medicine without a license.[1] *See* TEX.REV. CIV.STAT.ANN. art. 4495b, § 3.07(a). "Practicing medicine" is defined as:

(12) "Practicing medicine." A person shall be considered to be practicing medicine within this Act:

(A) who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical,

---

1. The allegation portion of the complaint stated:

Linda J. Weyandt, hereafter styled the Defendant, on or about February 28, 1997, did then and there unlawfully intentionally and knowingly practice medicine, to wit: by using the initials "DR." and "M.D." and representing herself as an, M.D., to a patient, namely E.G. Mihalco to induce her to receive medical treatment, namely shock treatment for the defendant's diagnosis of muscle injury, without first having obtained a license from the State Board of Medical Examiners.

The information stated:

Linda J. Weyandt, hereafter styled the Defendant, on or about February 28, 1997, did then and there unlawfully intentionally and knowingly practice medicine, to wit: by using the initials "DR." and "M.D." and representing herself as an, M.D., to a patient, namely E.G. Mihalco [Mihalco, changed without objection by defense] to induce her to receive medical treatment, namely shock treatment for the defendant's diagnosis of muscle injury, without first having obtained a license from the State Board of Medical Examiners.

or any physical deformity or injury by any system or method or to effect cures thereof; or

(B) who shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation.

TEX.REV.CIV.STAT.ANN. art. 4495b, § 1.03(a)(12).

■ The information alleged appellant publicly professed herself to be a physician by misusing the initials, "Dr." and "M.D." *and* by representing herself as an "M.D." to officer Mihalco. The jury charge was different from the information. The jury charge substituted the word "in" for "and" and thereby effectively required a finding that appellant utilized the initials "Dr." and "M.D." specifically to induce Mihalco to receive medical treatment.[2]

The hypothetically correct jury charge would have allowed a finding that appellant publicly professed to be a physician by the alternative means of "using the initials 'Dr.' or 'M.D.' *or* by representing herself as a physician to a patient ... to induce her to receive medical treatment." To require the State to prove appellant publicly professed to be a physician by using the initials Dr. and M.D. *and* by representing herself as a physician to Mihalco would unnecessarily increase the State's burden of proof and would not adequately describe the offense appellant was charged with. The remainder of the unlicenced practice of medicine statute was satisfied by the requirement that the jury find appellant diagnosed a disorder (a "muscle injury") and provided treatment ("shock treatment") to Mihalco.

The standard formulated by *Malik* "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." 953 S.W.2d at 240; *see Mijores v. State*, 11 S.W.3d 253, 256 (Tex.App.—Houston [14th Dist.] 1999, no pet.).

Before discussing whether appellant practiced medicine without a license, we must determine what acts she was permitted to perform as a CRNA. The requirement that a person must be licensed to practice medicine does not apply to "registered or professional nurses and licensed vocational nurses registered or licensed under the laws of this state who confine

---

2. The charge stated:

Our law provides that a person practicing medicine in the State of Texas must be licensed by the State Board of Medical Examiners. A person who knowingly or intentionally practices medicine without a license commits an offense.

A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

It shall be unlawful for any individual by the use of any letters, words, or terms, as an affix on stationary or on advertisements, or in any manner, to indicate that the individual is entitled to practice medicine if the individual is not licensed to do so.

A person shall be considered to be practicing medicine if they publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat any disease or disorder, mental or physical, or any physical deformity by any system or method to effect cures thereof.

Therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, LINDA J. WEYANDT, hereafter styled the defendant, on or about FEBRUARY 28TH, 1997, did then and there unlawfully intentionally or knowingly practice medicine, to wit: by using the initials "Dr." or "M.D." in representing herself as a physician to a patient, namely E.G. MIHALCO, to induce her to receive medical treatment, namely shock treatment for the defendant's diagnosis of muscle injury, without having first obtained a license from the State Board of Medical Examiners, then you will find the Defendant guilty.

If you do not so believe, or if you have a reasonable doubt thereof you will find the defendant not guilty.

their practice strictly within the provisions of such applicable licensing Acts and under the laws of this state...." TEX.REV.CIV. STAT.ANN. art. 4495b, § 3.06(a)(4). Under the Board of Nurse Examiners's rules, a CRNA may select, obtain, and administer anesthesia and anesthesia-related services in certain facilities in accordance with a physician's order if the facility policy or medical staff bylaws permit it, as follows:

> (a) In a licensed hospital or ambulatory surgical center, consistent with facility policy or medical staff bylaws, a nurse anesthetist may select, obtain and administer drugs, including determination of appropriate dosages, techniques and medical devices for their administration and in maintaining the patient in sound physiologic status pursuant to a physician's order for anesthesia or an anesthesia-related service. This order need not be drug-specific, dosage specific, or administration-technique specific.

> (b) Pursuant to a physician's order for anesthesia or an anesthesia-related service, the nurse anesthetist may order anesthesia-related medications during perianesthesia periods in the preparation for or recovery from anesthesia. Another RN may carry out these orders.

> (c) In providing anesthesia or anesthesia-related service, the nurse anesthetist shall select, order, obtain and administer drugs which fall within categories of drugs generally utilized for anesthesia or anesthesia-related services and provide the concomitant care required to maintain the patient in sound physiologic status during those experiences.

22 TEX.ADMIN.CODE § 222.6 (1999) (Texas Board of Nursing Examiners, Advanced Practice Nurses). Accordingly, a CRNA who, "pursuant to [a physician's] order and in accordance with facility policies or medical staff bylaws," selects, obtains, or administers an anesthetic or anesthetic-related service and maintains a patient's physiological status does not practice medicine. TEX.REV.CIV.STAT.ANN. art. 4495b, § 3.06(d)(6)(I); *see Drennan v. Community Health Inv. Corp.*, 905 S.W.2d 811, 825–26 (Tex.App.—Amarillo 1995, writ denied).[3]

The Texas Court of Criminal Appeals has defined the practice of medicine as follows:

> In construing the Medical Practice Act,[4] and in determining what constitutes the practice of medicine thereunder, it has been the long and consistent holding of this court that one who publicly professes to treat diseases or disorders, as a profession or avocation is practicing medicine, regardless of the system or method employed, the name by which the system is known, or whether or not drugs or surgery are used. The practice of medicine as contemplated and defined by law, is not restricted to the treatment of diseases and disorders of the human body by the use of drugs or surgery.

*Ex Parte Halsted*, 147 Tex.Crim. 453, 182 S.W.2d 479, 483 (1944). In *Kelley v. Texas State Board of Medical Examiners*, the Fort Worth Court of Appeals found that dentists engaged in public profession of the practice of medicine where the dentists

**3.** We disagree with Amici American Association of Nurse Anesthetists and Texas Association of Nurse Anesthetists, who argue that peripheral nerve stimulators, such as the one used by appellant are routinely—and properly—used by all anesthesia providers, including nurse anesthetists, in their anesthesia practice. The legislature has restricted a CRNA's practice to the administration of anesthesia and maintenance of an anesthesia patient—all of which must be done under the delegation of a physician. *See* TEX.REV.CIV. STAT.ANN. art. 4495b, § 3.06(d)(6)(I) (Vernon Pamph.1999) (current version at TEX.OC-CUP.CODE ANN. § 157.058(c)); OP.TEX.ATT'Y GEN. No. JC–0117 (1999).

**4.** TEX.REV.CIV.STAT.ANN. art. 4510 (Vernon 1976) *repealed* Acts 1981, 67th Leg., 1st C.S., p. 36, ch. 1, § 6(a), is the same statute in question, TEX.REV.CIV.STAT. ANN. art. 4495, §§ 1.03(a)(12) & 3.07(a) (Vernon Pamph. 1999) (current version at TEX.OCCUP.CODE ANN. §§ 151.002(a)(13) & 165.152 (Vernon Pamph. 2000)) in this appeal.

**152**

professed to patients that they could use a blood test to diagnose cancer. *See* 467 S.W.2d 539, 542 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.), *cert. denied,* 405 U.S. 1073, 92 S.Ct. 1494, 31 L.Ed.2d 807 (1972). When determining whether a defendant publicly professes to be a physician, "[i]t is not necessary in connection with [physician-like statements and activities] to say you are a medical doctor, a physician, or a surgeon, if what you say and do fall within the definitions of the Texas Medical Practice Act." *Id.* Stated differently, what one does, and not only what one says they are doing, determines whether they are practicing medicine. *See id; Smith v. State Board of Medicine,* 74 Idaho 191, 194, 259 P.2d 1033 (1953).

Appellant's conduct during Mihalco's visit constituted, in itself, a public profession of her status as a physician. *See Halsted,* 147 Tex.Crim. 453, 182 S.W.2d at 483; *Kelley,* 467 S.W.2d at 542. Appellant communicated to Mihalco, both expressly and implicitly, that she was a physician. For example, her office door identifies her as "Dr. Linda J. Weyandt," and she introduced herself to Mihalco as "Dr. Weyandt"; she displayed to Mihalco certificates identifying her as an "M.D."; and she implicitly suggested that she was a physician by purporting to diagnose the cause of and actually treat Mihalco's claimed physical disorder. *See Halsted,* 147 Tex.Crim. 453, 182 S.W.2d at 483; *Kelley,* 467 S.W.2d at 542.

Additionally, three witnesses testified regarding whether appellant knowingly or intentionally represented herself as a physician to Mihalco. Kathleen Warren testified that she understood from appellant's ads that appellant was a doctor and that appellant told her she was an anesthesiologist. Warren testified she was aware of the differences between an anesthetist and an anesthesiologist, and she was certain appellant claimed to be an anesthesiologist. Also, Shelia Dewan testified she visited appellant's office because appellant was the only hypnotherapist in the telephone book who was a doctor. During Dewan's visit, she permitted appellant to treat her sinus problems by sticking acupuncture needles in her face, which she would not have permitted appellant to do but for her belief appellant was a doctor. Furthermore, Barbara Twigg, who suffered from a degenerative disc disease, testified she and her psychologist sought alternative methods of pain management to avoid addiction to narcotic pain medication. They selected appellant from a list of physicians, which Twigg's psychologist received from a colleague, specializing in pain management. The psychologist testified that when he discussed Twigg's condition with appellant, before sending Twigg to see her, he believed she was a licensed physician. He stated he never would have referred Twigg to appellant, and Twigg stated she never would have visited appellant, if they had known that appellant was not licensed to practice medicine.

■ After reviewing the evidence in the light most favorable to the jury's verdict, we find the evidence at trial is legally sufficient to support the jury's verdict that appellant practiced medicine without a license. Appellant's speculation that Mihalco's discomfort was the product of "some type of muscle injury or tissue injury" plainly constituted "diagnosis"; and her using the "peripheral nerve stimulator" constituted "treatment" of a perceived disorder. Accordingly, we overrule appellant's second point of error.

### Factual Sufficiency

■ The Court of Criminal Appeals recently rearticulated the factual sufficiency standard of review and now requires courts of appeal to ask the following question: Whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State,* 23 S.W.3d 1, 11 (Tex.

Crim.App.2000); *see also Childs v. State,* 21 S.W.3d 631, 634 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). If we determine a manifest injustice has occurred, we may not defer to the jury's findings, but rather provide a "clearly detailed explanation of that determination that takes all of the relevant evidence into consideration." *Johnson,* 23 S.W.3d at 12; *see Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

■ As we determined, the sufficiency of the evidence in this case must be viewed by the hypothetically correct jury charge, which would have accurately set out the elements. Factual sufficiency of the evidence is also viewed using the hypothetically correct jury charge. *See McCain v. State,* 987 S.W.2d 134, 135 n. 1 (Tex.App.—Houston [14th Dist.] 1998) *rev'd in part on other grounds,* 22 S.W.3d 497 (Tex.Crim. App.2000).

A neutral review of the evidence requires us to examine the evidence at trial favoring appellant. Appellant made Mihalco sign an acknowledgment after filling out her clinic's forms.[5] Appellant also answered her own phone, which she argues is something rarely done by licensed phy-

sicians. Also, no additional staff was present at the clinic. Certificates on her office wall indicated only her certification in hypnotherapy and pain management. Appellant advertised in the hypnotherapist section of the yellow pages, not the physician section. She also referred people to a medical clinic if they requested medical treatment as opposed to the pain therapy, which appellant argues she was authorized and qualified to provide. Mihalco conceded, under cross-examination, that appellant never identified herself as an anesthesiologist. Appellant provided three witnesses, including a Houston police officer, who claimed appellant did not represent herself as a licensed physician to him. Finally, appellant claims she did not provide any independent diagnosis of Mihalco's problem, but only accepted Mihalco's condition as it was presented to her.

Appellant also argues she graduated from a school of medicine, holds a degree as a "Doctor of Medicine," therefore she is entitled to call herself "Doctor Weyandt." The problem in this case, is not lack of academic credentials, it is a lack of a license to practice medicine in Texas. Further, the criminal statute is clearly directed at those who "hold themselves out" to

---

5. The acknowledgment stated:

I acknowledge that I understand this questionnaire. All information provided by me is *complete and accurate to the best of my* knowledge.

I hereby request and agree to be taught self-hypnosis and give permission for consulting and/or hypnotic conditioning for the above stated area of concern. I understand and acknowledge that hypnotherapy and hypnosis cannot force me to do something that is against my own nature or desires; and as such I am solely responsible for my own actions and emotions and hold harmless ASSOCIATED HYPNOTHERAPY SERVICES OF TEXAS, Ltd., of any liability for my actions and emotions. In signing this form, I acknowledge understanding that HYPNOTHERAPY is a conditioning process, whereby an individual is taught to use their OWN ABILITIES for their OWN BENEFIT, and that this process may take several sessions for GOOD LONG LASTING RESULTS.

I understand that ASSOCIATED HYPNOTHERAPY SERVICES OF TEXAS' pro-

grams are vocational or avocational self-improvement, do not include or attempt to work in areas such as medicine, psychiatry, etc., *which are outside ASSOCIATED HYPNOTHERAPY SERVICES OF TEXAS'* chosen specialty, and that problems of psychogenic or functional origin are only accepted and treated by medical mor mental health referral as mandated. I understand that the hypnotherapy counseling I will receive is not a substitute for medical care, and I have been advised to discuss this hypnotherapy program with any doctor who is taking care of me now or in the future. Additionally, I understand that I should continue any present medical treatment and consult my regular medical doctor for treatment of any new or old illnesses.

I understand that it is my responsibility to discuss with my doctor any exercise program that ASSOCIATED HYPNOTHERAPY SERVICES OF TEXAS may suggest.

I understand that psychotherapy is available at ASSOCIATED HYPNOTHERAPY SERVICES OF TEXAS if I choose to use it.

be a "doctor"/"physician" without holding also a license from the State of Texas. Calling herself "Doctor" and treating patients is clearly the conduct prohibited by statute.

After conducting a neutral review of the evidence, we find the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination. Accordingly, we overrule appellant's first point of error.

### Extraneous Offenses

■ In her third point of error, appellant argues the trial court reversibly erred in overruling her objections to the admission of testimony from three other individuals who believed she was a licensed physician, and that investigators discovered certain drugs at appellant's clinic, including lidocaine, which cannot be administered without a prescription. Appellant argues the testimony was inadmissible under Evidence Rule 404(b), because it tended only to reveal her bad character, and under Evidence Rule 403, because its probative value was outweighed by its potential prejudicial effect. We review a trial court's decision whether to admit evidence of an extraneous offense under an abuse of discretion standard. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

■ Appellant filed a pretrial motion in limine regarding any statements she may have made to several individuals, including the witnesses whose testimony is discussed under this point of error. However, the trial court's denial of this motion in limine does not preserve any error for us to review. *See McDuff v. State,* 939 S.W.2d 607, 613 (Tex.Crim.App.1997). Because appellant did not make any contemporaneous objection to the testimony of Kathleen Warren or Sheila Dewan during their testimony, no error has been preserved for review regarding these witnesses. *See* Tex.R.App.P. 33.1(a).

■ Regarding Barbara Twigg, appellant did object once during her testimony that Twigg's testimony violated Evidence Rules 402, 403 and 404. However, appellant did not further object when Twigg resumed her testimony about appellant's holding herself out as a physician. Any error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *See Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App. 1991). Thus, nothing is presented for our review.

■ Regarding the lidocaine found in appellant's clinic, appellant initially properly objected to its introduction. The trial court admitted the evidence of lidocaine found at the clinic because appellant "opened the door" to such evidence by emphasizing on cross-examination that appellant administered only medicine-free therapy. The trial court did not abuse its discretion by permitting the State to offer evidence of extraneous misconduct to correct a false impression created by appellant during her cross-examination of witnesses. *See Poole v. State,* 974 S.W.2d 892, 905–06 (Tex.App.—Austin 1998, pet. ref'd). Accordingly, we overrule appellant's third point of error.

### Constitutionality of Statute

In her fourth point of error, appellant argues section 3.07(e) of the Medical Practice Act is unconstitutionally vague and overbroad in violation of Article I, section 19 of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

■ The power to create and define criminal offenses rests within the sound discretion of the legislature. *See* Tex. Const. art. III, § 1; *Webb v. State,* 991 S.W.2d 408, 414 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd). Unless limited by constitutional provisions, the legislature has the inherent power to define and punish any act as a crime. *See id.* Whenever an attack upon the constitutionality of a

statute is presented for determination, we commence with the presumption that such statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting the statute. *See Cotton v. State,* 686 S.W.2d 140, 144 (Tex.Crim.App.1985); *DeWillis v. State,* 951 S.W.2d 212, 214 (Tex.App.—Houston [14th Dist.] 1997, no pet.). The burden rests on the individual who challenges the statute to establish its unconstitutionality. *See Cotton,* 686 S.W.2d at 144; *Morris v. State,* 833 S.W.2d 624, 627 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Furthermore, it is our duty to uphold the statute if a reasonable construction of the statute at issue can be determined which will render it constitutional and carry out the legislative intent. *See Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979); *DeWillis,* 951 S.W.2d at 214.

### Vagueness Claims

 "All criminal laws must give fair notice to the populace as to what activity is made criminal so that individuals have fair warning of what is forbidden." *Margraves v. State,* 996 S.W.2d 290, 303 (Tex.App.—Houston [14th Dist.] 1999, pet. granted). Criminal statutes must provide an "objective standard by which a person's conduct can be measured ... A statute which forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Cotton,* 686 S.W.2d at, 141. To determine whether a law provides fair notice requires a two-step process. First, we must determine whether appellant, as an ordinary person, received sufficient information from the statute to understand exactly what conduct is prohibited so that she could act in a lawful manner. *See id.; State v. Fry,* 867 S.W.2d 398, 401 (Tex. App.—Houston [14th Dist.] 1993, no pet.). Second, we must determine whether section 3.07(e) provides sufficient notice of the prohibited conduct to law enforcement personnel, so that appellant is not arbitrarily

or discriminatorily prosecuted by the State or convicted by the jury. *See id.* If either of these inquiries is not met, a statute may be unconstitutionally vague. *See id.* (citing *Adley v. State,* 718 S.W.2d 682, 685 (Tex.Crim.App.1985)).

 Additionally, "a statute is not unconstitutionally vague merely because words or terms used are not specifically defined." *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988). Undefined words are ordinarily given their plain meaning unless the statute clearly shows that they were used in some other sense. *See Ex parte Anderson,* 902 S.W.2d 695, 699 (Tex.App.—Austin 1995, pet. ref'd). Statutory words are to be read in context and construed according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). A statutory provision need not be cast in terms that are mathematically precise; it need only give fair warning of the conduct proscribed and provide guidelines for law enforcement. *See Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972); *State v. Mendel,* 871 S.W.2d 906, 909 (Tex.App.— Houston [14th Dist.] 1994, no pet.).

 Appellant argues the statute is unconstitutionally vague because the words "in any other manner" do not provide an objective standard by which to measure appellant's conduct, and do not provide adequate notice to appellant or law enforcement personnel of what conduct is prohibited. We disagree.

Section 3.07(e) of the Medical Practice Act provides that:

> It shall be unlawful for any individual, partnership, trust, association, or corporation by the use of any letters, words, or terms as an affix on stationary or on advertisements, or in any other manner, to indicate that the individual partnership, trust, association, or corporation is entitled to practice medicine if the individual or entity is not licensed to do so.

TEX.REV.CIV.STAT.ANN. art. 4495b, § 3.07(e) (Vernon Supp.1999).

Applying the statute to appellant's specific conduct, section 3.07(e) is not impermissibly vague as applied to her conduct. Section 3.07(e) does not prohibit appellant from telling others she holds a medical degree. It only prohibits the use of the initials "M.D." and "Dr." in a fashion indicating she is entitled to practice medicine. Appellant's use of *both* "Dr." and "M.D.," in the particular context of the operation of her clinic, indicated to visitors she was entitled to practice medicine. Accordingly, appellant has failed to show the statute is "unconstitutional as to [her] in [her] situation; that it may be unconstitutional as to others is not sufficient." *Parent v. State*, 621 S.W.2d 796, 797 (Tex.Crim.App.1981); *see Webb*, 991 S.W.2d at 416.

### Overbreadth Claims

 In an overbreadth challenge, we must determine whether the statute reached a substantial amount of constitutionally protected conduct. *See Webb*, 991 S.W.2d at 415 (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). If a statute does not, the overbreadth challenge will fail. *See id.* The overbreadth doctrine is limited in context to First Amendment issues. *See Bynum*, 767 S.W.2d at 772–73.

 Section 3.07(e) implicates no First Amendment protections. By its terms, the statute punishes only those individuals who practice medicine without a license. The right to practice medicine, to diagnose maladies, and to prescribe for their treatment is not constitutionally superior to the State's power to impose comprehensive and rigid regulations on the practice. *See Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). In *Dent*, the United States Supreme Court upheld the constitutionality of regulating the practice of medicine as being a reasonable exercise of the State's police power to regulate. *See id.*

The overbreadth doctrine is based on the principle that "a governmental purpose to control or prevent activities constitutionally subject to regulation may not be achieved by means which are unnecessarily broad and thereby invade the area of protected freedoms." *Gholson v. State*, 667 S.W.2d 168, 172 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). The statute punishes only speech implying a person is permitted by the State to practice medicine. It does not reach a substantial amount of constitutionally protected conduct. *See Webb*, 991 S.W.2d at 415; *Blanco v. State*, 761 S.W.2d 38, 40 (Tex.App.—Houston [14th Dist.] 1988, no pet.). Thus, Section 3.07(e) does not infringe on constitutionally protected freedoms.

Accordingly, we overrule appellant's fourth point of error.

### Comment on Failure to Testify

In her fifth point of error, appellant contends that the prosecutor improperly commented on her failure to testify when, in an attempt to call to the stand rebuttal witness Anesthesiologist Maymi, the prosecutor inadvertently transposed the appellant's name with Maymi's:

THE COURT: Will there be any rebuttal from the State?

MR. O'BRIAN [prosecutor]: The State calls Dr. Weyandt. I mean, the State calls Dr. Maymi.

(The following proceedings were had at the bench outside the presence of the jury:)

MR. TRITICO [appellant's counsel]: I have to object. Counsel just said I call Dr. Weyandt and he corrected what he did, you know. But it violates my client's right to be silent and placed it in the minds of the jury that she should have testified. I have to object to it.

THE COURT: Overruled.

MR. O'BRIEN: I apologize.

MR. TRITICO: I would ask for a mistrial based on what happened.

THE COURT: That will be overruled.

 A comment on the defendant's failure to testify violates the privilege against self-incrimination in the Fifth Amendment to the United States Constitution, Article I, Section 10 of the Texas Constitution, and Article 38.08 of the Texas Code of Criminal Procedure. *See* U.S. CONST.AMEND. V; TEX. CONST. Art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979); *Saldivar v. State*, 980 S.W.2d 475, 501 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). To determine whether a prosecutor's argument constitutes an allusion to or comment upon the failure of a defendant to testify, we review the language from the standpoint of the jury. *See Goff v. State*, 931 S.W.2d 537, 548 (Tex.Crim.App.1996). We consider whether the offending language was manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *See Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App.1987), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996). It is not enough that the language might be construed as an indirect or implied allusion to a defendant's failure to testify; the implication that the offending language made reference to the failure to testify must be a necessary one. *See Swallow v. State*, 829 S.W.2d 223, 225 (Tex.Crim.App.1992). A statement is not a direct comment on a defendant's failure to testify when it does not refer to evidence that can come only from the defendant. *See Goff*, 931 S.W.2d at 548.

 Here, the prosecutor's misstatement was merely a slip of his tongue. He was attempting to call a witness and did not comment about appellant's previous failure to serve as a witness. This inadvertent transposition of the defendant's name for that of a witness being called to testify does not rise to the level of being a comment on appellant's failure to testify. As such, the prosecutor's small mistake was not such that the jury would naturally and necessarily take it to be a comment upon appellant's failure to testify. *See Antwine v. State*, 572 S.W.2d 541, 544 (Tex.Crim.App.1978); *Green v. State*, 640 S.W.2d 645, 648–49 (Tex.App.—Houston [14th Dist.] 1982, no pet.). Thus, appellant's fifth point of error is overruled.

Having overruled each of appellant's points of error, we affirm the trial court's judgment.