MEMORANDUM OPINION



No. 04-07-00860-CR



EX PARTE Carlos MORALES-RYAN






From the 341st Judicial District Court, Webb County, Texas


Trial Court No. 2007-CV6-001600-D3


Honorable Elma Salinas Ender, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Karen Angelini, Justice


Delivered and Filed: June 11, 2008


AFFIRMED

 Carlos Armin Morales-Ryan was indicted and arrested on thirteen counts of engaging in the
practice of medicine without a license. Released on bond, Morales-Ryan filed an Application for
Writ of Habeas Corpus which was denied. Morales-Ryan appeals.

Background

 Morales-Ryan earned a degree of doctor in dental surgery and a certificate of oral surgery in
Mexico. He also received a postdoctoral oral and maxillofacial surgery certificate in Puerto Rico. 
He then studied oral and maxillofacial surgery in Dallas, Texas at the Baylor Health Science Center,
specializing in temporomandibular joint and orthognathic surgery. He further studied and
specialized in aesthetic (cosmetic) surgery in Plano, Texas. Because Texas does not have a separate
license for oral and maxillofacial surgeons, Morales-Ryan's Texas dental license contains a special
designation permitting him to administer anesthesia because he is also an oral and maxillofacial
surgeon. 

 Morales-Ryan was indicted and arrested for operating a practice in which he engaged in non-dentistry and non-oral and maxillofacial surgeries including: tummy tucks, liposuction, and breast
augmentation. At the hearing on Morales-Ryan's request for habeas relief, Morales-Ryan argued
that he is qualified to perform the challenged procedures because he is a surgeon and, under the
Texas Medical Practice Act (1) (the "Act"), "the terms 'physician' and 'surgeon' are synonyms." He
challenged the validity of the indictment and the section of the Act upon which it was based. The
State contended that, even if Morales-Ryan had been trained to perform such procedures, he was not
qualified to perform such procedures in Texas because he is not a licensed physician. The trial court
denied habeas relief.

Scope of Pretrial Writ of Habeas Corpus

 "A defendant may use a pretrial writ of habeas corpus only in very limited circumstances." 
Ex parte Smith, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). A defendant may challenge the
State's authority and manner of restraint and "may raise certain issues which, if meritorious, would
bar prosecution or conviction." Id. "Because the denial of habeas corpus relief, based on
fundamental constitutional principles, permits an interlocutory appeal," appellate courts will consider
only those matters that are appropriate for pretrial review. Id. For example, a defendant may
challenge the constitutionality of a statute but may not use the writ to directly challenge the
sufficiency of an indictment. Id. 

 Morales-Ryan contends the sections of the Act under which the State brought the charges
against him are unconstitutional. Specifically, Morales-Ryan claims: (1) the relevant statutes are
void for vagueness, violate Morales-Ryan's guarantee of due process, and invalidate the indictment;
(2) a court may not freely interpret the Act contrary to the legislature's intent; and (3) the sections
of the Act violate both article XVI, section 31 of the Texas Constitution and the Dormant Commerce
Clause. These claims by Morales-Ryan fall within the permissible scope of a pretrial writ and will
be addressed below. See Ex parte Weise, 55 S.W.3d 617, 620-21 (Tex. Crim. App. 2001) (indicating
appropriate issues for a pretrial habeas application are issues that, when resolved in favor of the
applicant, would result in his immediate release including the facial constitutionality of a statute and
the indictment based on such a statute).

Standard of Review

 When a statute is attacked as unconstitutional, we begin our analysis with the presumption
that the statute is valid and that the legislature acted reasonably in enacting the statute. Ex parte
Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The challenger bears the burden to
establish the statute's unconstitutionality. Id. We will sustain a statute's validity if we determine
that any construction supports a reasonable intendment or allowable presumption. Id.

Vagueness

 Morales-Ryan contends the Act is void for vagueness. Criminal laws must fairly warn
individuals of what activity is forbidden. Weyandt v. State, 35 S.W.3d 144, 155 (Tex.
App.--Houston [14th Dist.] 2000, no pet.) (quoting Margraves v. State, 996 S.W.2d 290, 303 (Tex.
App.--Houston [14th Dist.] 1999), rev'd on other grounds, 34 S.W.3d 912 (Tex. Crim. App. 2000)). 
"A statute which forbids or requires the doing of an act in terms so vague that men of common
intelligence must necessarily guess at its meaning and differ as to its application violates the first
essential of due process of law." Cotton v. State, 686 S.W.2d 140, 141 (Tex. Crim. App. 1985). We
make two inquiries to determine if a statute is vague. Weyandt, 35 S.W.3d at 155. A statute is
unconstitutionally vague if either: (1) people of ordinary intelligence cannot ascertain what activity
is forbidden by the statute; or (2) the statute encourages arbitrary arrests or prosecution. Id.; see also
Cotton, 686 S.W.2d at 141.

 The State charged Morales-Ryan with thirteen counts of "intentionally or knowingly
engag[ing] in the practice of Medicine, to-wit: Cosmetic Surgery without a license in violation of
Texas Occupations Code Chapter 165 Section 152; (2) to-wit: Carlos Morales-Ryan performed a
[variety of non-dentistry surgical procedures] on [patients]." Section 165.152 entitled Practicing
Medicine in Violation of Subtitle sets forth:

(a) A person commits an offense if the person practices medicine in this state
in violation of this subtitle.

(b) Each day a violation continues constitutes a separate offense.

(c) An offense under Subsection (a) is a felony of the third degree.

(d) On final conviction of an offense under this section, a person forfeits all
rights and privileges conferred by virtue of a license issued under this
subtitle. 


Tex. Occ. Code Ann. § 165.152 (Vernon 2004). In order to determine what constitutes practicing
medicine without a license in violation of the subtitle, we look to section 155.001 of the Act which
states: "A person may not practice medicine in this state unless the person holds a license issued
under this subtitle." Tex. Occ. Code Ann. § 155.001 (Vernon 2004). "Practicing medicine" is
defined under the Act as:

"the diagnosis, treatment, or offer to treat a mental or physical disease or
disorder or a physical deformity or injury by any system or method, or the
attempt to effect cures of those conditions, by a person who:


 publicly professes to be a physician or surgeon; or
 directly or indirectly charges money or other compensation for those
services.



Tex. Occ. Code Ann. § 151.002 (a)(13) (Vernon Supp. 2007). A "physician" is defined as "a
person licensed to practice medicine in this state," and the terms "physician" and "surgeon" are used
synonymously. Id. at (a)(12), (b). "Surgery" includes "surgical services, procedures, and
operations." Id. at (a)(14)(A). Section 151.052 exempts licensed dentists who are engaged strictly
in the practice of dentistry from the Act. Tex. Occ. Code Ann. § 151.052 (Vernon 2004). 

 Morales-Ryan contends the sections of the Act upon which his indictment is based are so
vague that they violate his due process rights of fair notice and fail to establish an ascertainable
offense. (3) Morales-Ryan also argues that the Act's use of "physician" and "surgeon" as
interchangeable terms creates an "ambiguity that would tend to mislead a person of ordinary
intelligence" and "encourage erratic and arbitrary prosecution." (4) 

 The Act clearly makes it a felony offense to practice medicine (including performing surgery)
without a license. Tex. Occ. Code Ann. §§ 155.001, 165.152 (Vernon 2004). The Act also
excludes from its coverage dentists engaged strictly in the practice of dentistry because they are
regulated by the Dental Practice Act. Tex. Occ. Code Ann. §§ 151.052, 251-266 (Vernon 2004 &
Vernon Supp. 2007); see also Kelley v. Tex. State Bd. of Med. Exam'rs, 467 S.W.2d 539, 543-44
(Tex. Civ. App.--Fort Worth 1971, writ ref'd n.r.e.), cert. denied, 405 U.S. 1073 (1972). "The
Medical Practice Act, as well as the definition of 'practicing medicine,' has been sustained as
valid--not only by [the court of criminal appeals], but also by the Supreme Court of the United
States." Ex parte Halsted, 147 Tex. Crim. 453, 182 S.W.2d 479, 483 (1944) (citing several Texas
cases considered by the Supreme Court). Although section 151.052 exempts licensed dentists who
are engaged strictly in the practice of dentistry from the Act's regulations, Tex. Occ. Code Ann.
§ 151.052 (Vernon 2004), "[a] person who is duly licensed as a dentist is not authorized to practice
medicine unless he is also duly licensed to practice medicine pursuant to [chapter 155 of the Act]." 
Kelley, 467 S.W.2d at 542.

 While Morales-Ryan is licensed to practice dentistry in Texas, he is not licensed to practice
medicine in Texas. As a dentist with a dental specialty, Morales-Ryan is licensed to perform oral
and maxillofacial surgery which is limited to "the diagnosis of and the surgical and adjunctive
treatment of diseases, injuries, and defects involving the functional and aesthetic aspects of the hard
and soft tissues of the oral and maxillofacial region." See Tex. Occ. Code Ann. § 251.003(c)
(Vernon 2004). The State alleged Morales-Ryan performed surgical liposuction, abdominoplasty
(tummy tuck), and augmentation mammoplasty (breast augmentation). Each of these challenged
procedures falls within the statutory definition of practicing medicine, see Tex. Occ. Code Ann.
§ 151.002(a)(13) (Vernon Supp. 2007), and falls outside the statutory definition of practicing
dentistry, including oral and maxillofacial surgery. See Tex. Occ. Code Ann. § 251.003(a)-(c)
(Vernon 2004). Applying the Act to Morales-Ryan's specific conduct, the challenged surgical
procedures were not strictly dentistry procedures and were not procedures Morales-Ryan was
licensed to perform under either his dentistry license or his oral and maxillofacial surgery specialty
because they were performed on regions of the body beyond the oral and maxillofacial region. See
id.; Kelley, 467 S.W.2d at 544. Morales-Ryan was not, therefore, "within the exception provided
by law, as it apples to dentists." Kelley, 467 S.W.2d at 544. Furthermore, while performing the
alleged surgical procedures, Morales-Ryan held himself out to be a surgeon who would perform the
procedures for compensation, as evidenced by his web site, in violation of the Act. See Tex. Occ.
Code Ann. § 151.002(a)(13)(B) (Vernon Supp. 2007). The Act, therefore, provided fair notice of
the forbidden acts to persons of ordinary intelligence such as Morales-Ryan and any law enforcement
officials who might use the Act to prosecute Morales-Ryan. See Cotton, 686 S.W.2d at 141;
Weyandt, 35 S.W.3d at 155. We conclude Morales-Ryan has failed to show the Act is
unconstitutionally vague or denies him due process of law. Bynum v. State, 767 S.W.2d 769, 773
(Tex. Crim. App. 1989).

 Morales-Ryan further claims that the "rule of lenity" requires resolution of the vagueness
question in favor of Morales-Ryan. The rule of lenity applies when a statute is ambiguous. Cuellar
v. State, 70 S.W.3d 815, 819 n.6 (Tex. Crim. App. 2002). Although Morales-Ryan contends the
Act's use of "physician" and "surgeon" as interchangeable terms creates an ambiguity, we disagree. 
First, the Act is comprised of subtitle B and is entitled Physicians. See generally Tex. Occ. Code
Ann., tit. 3, subtit. B (Vernon 2004). The Act also defines physician, surgery, and practicing
medicine. See Tex. Occ. Code Ann. § 151.002 (a) (Vernon Supp. 2007). Next, the Dental Practice
Act, found in subtitle D and entitled Dentistry, specifically defines the practice of oral and
maxillofacial surgery. See Tex. Occ. Code Ann. § 251.003(c) (Vernon 2004). Thus, these statutes
clearly differentiate between a dentist oral and maxillofacial surgeon and a physician surgeon. See
Kelley, 467 S.W.2d at 544. Morales-Ryan emphasized this difference during his own testimony
when he stated: 

Now, there are medical doctors that want to go to practice oral/maxillofacial
surgery and [the dentistry board is] debating in what to do with them as they
have [a] medical degree. So now, they are going to be able to do that, but
they need to go to dental school and have an advanced-standing training,
performing three years of dental school in order to become--first become a
dentist and then do oral/maxillofacial surgery.


Because the Act clearly differentiates physician and surgeon from oral and maxillofacial surgeon,
the Act is not ambiguous, and the rule of lenity does not apply. See Cuellar, 70 S.W.3d at 819 n.6.

 Having determined the Act is not vague or ambiguous, we will address Morales-Ryan's
contention that the indictment fails to state an offense or clarify the elements of the offense. The
indictment charged Morales-Ryan with "intentionally or knowingly engag[ing] in the practice of
Medicine, to-wit: Cosmetic Surgery without a license in violation of Texas Occupations Code
Chapter 165 Section 152" by performing non-dentistry surgical procedures on patients. The
elements of the alleged offense are: (1) intentionally or knowingly; (2) practicing medicine; (3)
without a license (in violation of section 165.152). Morales-Ryan argues that "the text of the
relevant statutes does not penalize the practice of medicine without a license but rather the failure
to register." He bases this argument on his reading of section 165.152 in conjunction with section
311.006 of the Texas Government Code. See Tex. Gov't Code Ann. § 311.006(2) (Vernon 2005);
Tex. Occ. Code Ann. § 165.152 (Vernon 2004). Section 165.152 states: "A person commits an
offense if the person practices medicine in this state in violation of this subtitle." Tex. Occ. Code
Ann. § 165.152 (Vernon 2004) (emphasis added). Section 311.006 of the Texas Government Code
states "a reference to a subtitle, subchapter, subsection, subdivision, paragraph, or other numbered
or lettered unit without further identification is a reference to a unit of the next larger unit of the code
in which the reference appears." See Tex. Gov't Code Ann. § 311.006(2) (Vernon 2005). 
Applying section 311.006, Morales-Ryan contends "a unit of the next larger unit of the code in
which the reference appears" refers to subchapter D so that section 165.152 would be read as "A
person commits an offense if the person violates subchapter D." See Tex. Gov't Code Ann.
§ 311.006 (Vernon 2005). Morales-Ryan contends the only applicable offense found in subchapter
D is practicing medicine without complying with the registration requirements; therefore, the
indictment is insufficient. Contrary to Morales-Ryan's argument, however, section 165.152 is part
of chapter 165 which is "a unit of the next larger unit" called "Subtitle B" and known as the Medical
Practice Act. Furthermore, section 165.152 explicitly uses the word "subtitle," instead of subchapter,
subsection, subdivision, or paragraph, in its title as well as in its text. The "subtitle" to which section
165.152 refers, therefore, is "Subtitle B." 

 Additionally, Morales-Ryan's argument overlooks section 311.011(a) which states "[w]ords
and phrases shall be read in context and construed according to the rules of grammar and common
usage." See Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005). In context and according to the
rules of grammar and common usage, "this subtitle" means the subtitle that is "close by" or
"previously mentioned." The "closest" subtitle that was "previously mentioned" is subtitle B. 
Section 155.001 of subtitle B makes having a license a requirement to practice medicine. 
Consequently, Morales-Ryan's reading of section 311.006 is without merit, and the indictment
clearly states an offense and its elements. Morales-Ryan's first point of error is overruled.

Judicial Interpretation

 In Morales-Ryan's second point of error, he contends that if the statutes are vague, this court
is prohibited from interpreting the statutes in a manner that contradicts the legislature's instructions. 
We agree. Morter v. State, 551 S.W.2d 715, 718 (Tex. Crim. App. 1977); Ex parte Halsted, 182
S.W.2d at 481-82. However, because we conclude the Act is not vague, we need not consider these
issues.

Texas Constitution Article XVI § 31

 Morales-Ryan argues the Act violates article XVI's prohibition against granting a preference
for one school of medicine over another. Article XVI, section 31 of the Texas Constitution sets
forth: "The [l]egislature may pass laws prescribing the qualifications of practitioners of medicine in
this State, and to punish persons for malpractice, but no preference shall ever be given by law to any
schools of medicine." Tex. Const. art. XVI, § 31. According to Morales-Ryan, "the [l]egislature
has no power to punish a fully trained, accredited and licensed oral and maxillofacial surgeon, for
allegedly practicing outside of the scope of his expertise. Such . . . conduct would violate the
state['s] constitution[] . . . [by] stating that certain types of surgeons can only perform certain types
of procedures." 

 The Kelley case addressed whether the legislature could "draw the line between the practice
of dentistry and the practice of medicine." Kelley, 467 S.W.2d at 544. Relying on Ex parte Halsted,
the court held the "[l]egislature by statute may make reasonable classifications of practitioners. Such
classifications are not inhibited by the provisions of the [Fourteenth] Amendment to the Federal
Constitution." Id. at 543-44. Although the Kelley court did not specifically address whether the
distinction between dentists and physicians violated article XVI, section 31 of the Texas
Constitution, the court in Halsted used the then-current Dental Practice Act (5) as an example of a
statute that did not violate article XVI, section 31, "the validity of which ha[d] been sustained by the
courts." Ex parte Halsted, 182 S.W.2d at 485. The Halsted court went on to say "the dentist is
restricted to a certain part of the human body. He is not authorized to treat the body generally for
a disease or disorder." Id. at 486. Morales-Ryan admittedly performed surgical procedures beyond
the oral and maxillofacial region that were not directly related to the oral and maxillofacial region. 
Tex. Occ. Code Ann. § 251.003 (Vernon 2004). Because the legislature does not give preference
to one school of medicine over another by distinguishing between two schools and punishing those
who perform the practices of a school from which they are not licensed, Morales-Ryan's third point
of error is overruled. Ex parte Halsted, 182 S.W.2d at 486. 

Dormant Commerce Clause

 Finally, Morales-Ryan contends the Act violates the Dormant Commerce Clause. Congress
has the express power to regulate foreign and interstate commerce. U.S. Const., art. I, § 8, cl. 3;
R.R. Comm'n of Tex. v. Querner, 150 Tex. 490, 242 S.W.2d 166, 170 (1951). Conversely, states
retain the power to regulate local and intrastate commerce even if it has some effect on interstate
commerce. S. Pac. Co. v. Ariz., ex rel. Sullivan, 325 U.S. 761, 767, 770 (1945). According to the
Supreme Court, the Commerce Clause implicitly prohibits states from regulating certain commerce
if the state's regulations unduly burden interstate commerce, even where Congress has failed to
legislate on the subject. Id. at 768-69; see also Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S.
175, 179-80 (1995). This implicit principle is known as the Dormant Commerce Clause. 

 Morales-Ryan claims the Act violates the Dormant Commerce Clause because "it constitutes
a state imposed regulation of interstate commerce that is discriminatory to a particular school of
medicine--oral and maxillofacial surgeons and unfairly protects surgeons who hold medical
licenses." Morales-Ryan contends "[i]t creates less competition for MDs in the State of Texas." The
Dormant Commerce Clause may be violated when a state's regulations tend to favor its citizens over
that of another state. Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579
(1986); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 351-52 (1977). Texas's licensing
requirements for medical doctors and dentists do not restrict doctors who practice in Texas from
practicing in other states or countries according to the licensing requirements relative to the
particular state or country. See generally Tex. Occ. Code Ann. chs. 151-260 (Vernon 2004 &
Vernon Supp. 2007). Although maxillofacial surgeons licensed in another state may practice in
Texas only if they are licensed in Texas, and while these oral surgeons may not perform the same
procedures in Texas that they perform in other states, the Texas statutes do not favor one
maxillofacial surgeon over another based on where else the dentist may or may not be licensed. See
Tex. Occ. Code Ann. chs. 251, 256-260 (Vernon 2004 & Vernon Supp. 2007). All maxillofacial
surgeons in Texas are held to the same standard and are regulated evenhandedly. (6) See id.; see also
Brown-Forman Distillers Corp., 476 U.S. at 579. Furthermore, Texas's licensing statutes were
created for the health, safety, and welfare of its citizens and are, therefore, a proper exercise of the
Texas's police power. See Tex. Occ. Code Ann. §§ 151.003(1) (Vernon 2004) (stating "as a matter
of public policy it is necessary to protect the public interest through enactment of this subtitle to
regulate the granting of [the privilege to practice medicine] and its subsequent use and control"),
251.001 revisor's n. (recognizing "the purpose of the Dental Practice Act is to assure that the people
of the State of Texas receive the highest quality dental care"); Head v. N.M. Bd. of Exam'rs in
Optometry, 374 U.S. 424, 428-29 (1963); Ex parte Halsted, 182 S.W.2d at 482. Because Texas's
regulation of its health professions protects the safety of its citizens and does not unduly impact
interstate commerce, we overrule Morales-Ryan's fourth point of error. Head, 374 U.S. at 428-29.

Conclusion

 Based on the foregoing reasons, we conclude the trial judge did not err in denying Morales-Ryan's writ of habeas corpus. We affirm.

 Karen Angelini, Justice

DO NOT PUBLISH


1. The Act is comprised of Subtitle B of the Texas Occupations Code, is entitled Physicians, and includes
chapters 151 through 165 of the Texas Occupations Code. See Tex. Occ. Code Ann. chs. 151-165 (Vernon 2004 &
Vernon Supp. 2007).
2. Section 165.152 is contained in the Act. 
3. Although Morales-Ryan's writ application initially refers to both sections 165.152 and 165.159 of the Act,
the State's indictment is based only on section 165.152. The State and defense counsel apparently stipulated during the
hearing "that no assertion has been made as to [section] 165.159." The State's counsel also emphasized "we're not
proceeding on [section] 165.159." See Tex. Occ. Code Ann. § 165.159 (Vernon 2004). Consequently, we have not
addressed Morales-Ryan's contentions regarding that section of the Act.
4. The State initially charged Morales-Ryan with illegally performing rhinoplasty but indicated during the hearing
that it had abandoned those allegations because it determined rhinoplasty was a surgery of the maxillofacial region,
governed by the Dental Practice Act. See Tex. Occ. Code Ann. chs. 251-267 (Vernon 2004 & Vernon Supp. 2007). 
Morales-Ryan argues that the fact he was originally charged with performing rhinoplasty surgery confirms his contention
that the Act leads to erratic and arbitrary prosecution. Because the maxillofacial region includes the mouth, jaws, face,
and skull which necessarily includes the nose, the exclusion of rhinoplasty from the procedures for which a license is
required under the Act is clear on the face of the statutes and does not lead to erratic and arbitrary prosecution as
evidenced by the State's voluntary abandonment of the allegations.
5. See generally Vernon's Ann. P.C. arts. 751-754a (1925). This repealed Dental Practice Act is substantially
the same as the current Dental Practice Act.
6. Morales-Ryan contends Texas's statutes discriminate against oral maxillofacial surgeons and protect surgeons
who are medical doctors. This argument goes to the constitutionality of the statute vís-a-vís the Fourteenth Amendment
and article XVI, section 31 of Texas Constitution rather than the Dormant Commerce Clause. We previously addressed
this argument in the relative sections above.